By the Court.—Sedgwick, J.
The testimony sustains the finding of the learned judge, that the attorney was not the agent either of the plaintiffs or of Mrs. Halpine, in obtaining the money upon the check by means of the forged indorsement, neither had she authorized the indorsement.
The testimony as to the bond and mortgage was important for the purpose only of determining whether there had ever been an actual or constructive delivery of the check to Mrs. Halpine, or whether the indorsement was hers as made by her agent. It is not necessary to give this matter further attention.
When the plaintiffs presented their order for the money to the defendants and received upon it the check in question, drawn to the order of Mrs. Halpine, the mere receiving of this check was not a final or absolute satisfaction of the plaintiffs’ rights as to their *14 money deposited with defendants. The plaintiffs had the right still to demand the money on deposit, if at the same time they returned the check, unindorsed, and in such a state that the defendants’ rights had not been changed to their harm, and if the plaintiffs had not dealt with the check in a way that had damaged the defendants. It is to be particularly observed, that the holder is not chargeable with damage for negligence arising only from his keeping the check unpresented, until the day after its delivery.
In the present case, the check is in possession of defendants, without payment, for the payee never indorsed. The bank on which it was drawn took it on the day next its date. If the defendants have suffered damage from a dealing by plaintiff with the check, it has come from the check being certified by the bank, the subsequent taking of that check by the bank, the charging its amount to the defendants, and the defendants acquiescing in that charge, until a time, when, as the learned counsel for defendants argues, the statute of limitation prevents the defendant recovering from the bank the amount improperly charged by the latter.
A scrutiny of these acts shows that for the most part they are either tortious as to the plaintiffs, or voluntary by the defendants and the bank, as not the performance of any valid obligation between them.
The check having been made to a third party, was, to the knowledge of the parties, inchoate, and would be so until delivered to the payee. This affected to a due extent the implied contract. No cause of action could exist on the check as a chose in action, until the payee received it. At no time could the defendant get any right, as if upon a payment, until she indorsed it. The bank had no right to take the check and pay its amount until she had indorsed it.
The bank, in taking that check as it did, and as *15 suming the right to pay it, was liable to plaintiffs for a conversion of it. They were the owners of the piece of paper, with the inchoate contract upon its face. It is not necessary to determine the measure of the plaintiffs’ damages for such conversion. It may be that it would be a sufficient reason, under thé circumstances, to place the damages at a nominal amount; that the only value of the check was that plaintiffs must have it in order to bring an action against defendants for the original deposit, and that, as the bank had returned it to defendants, such an action could be brought without possession of the check. The quality of the act of the bank is of importance. It was wrongful to the plaintiffs. The defendants were also liable to the plaintiffs for a conversion of the check, when the defendants assumed dominion of the check, for the purpose of finally extinguishing plaintiffs’ right as to the money deposited with them, in derogation of the true title and right to possession.
In Graves v. American Exchange Bank (17 N. Y. 205), the defendant was the drawee of a bill of exchange, payable to the order of one who afterwards assigned to the plaintiff. A person having the same name as the payee, indorsed and presented the bill to the defendants, who paid it to Mm. The action was for a conversion of the bill, and judgment against defendant affirmed.' Judge Comstock, in the opinion, said: “ The defendant having got possession of it through a false or forged indorsement, and having refused to deliver it up or pay it to the owner, was liable for its conversion.” The learned judge did not, however, mean to say that it would not have been a conversion, if the plaintiff had not demanded it. The check, as in the present case, was never rightfully in possession of the bank, but the original taking was tortious, and no demand was necessary to put an end to a previous rightful holding. The bank and the de *16 fend ants were jointly liable as to the act by which the latter received the check from the former (White v. Sweeny, 4 Daly, 223; White v. Mechanics’ National Bank, Id. 225).
When the bank sent the check to the defendants as voucher for charging them with the amount paid upon it, the defendants’ acquiescence in that charge was purely voluntary on their part. By reason of the original understanding and contract, the check was to be paid to the order of a third party. The defendants could not base a right as against the plaintiffs upon a payment to any one else. They suffered the charge, made by the bank unnecessarily and voluntarily (Morgan v. Bank of the State of New York, 11 N. Y. 404, affirming 1 Duer, 434). At this point it is to be seen that the omission of plaintiffs to notify the defendants of the fact does not place the defendants in the better position. The defendants had contracted against paying on a forged indorsement. They did pay, or acquiesced in the payment, within a short time from the actual forgery. The plaintiffs, ignorant of the forgery, at most could only have instigated the defendants to bring an action against the bank, based upon a transaction which, as against the plaintiffs, should never have- taken place.
The only facts left upon which the defendants can rely, as a cause of damage, from neglect or laches of plaintiff, are that the check was actually certified, and remained so for a period of time, viz.: about thirty days before it came into defendants’ possession. It is argued the certification was a discharge of the defendants.
It does not clearly appear at what point the bank certified the' check, or in whose hands it then was. There is no finding as to this. On the testimony it appears that it was certified on the day of its date, but no reason was shown for its being certified by the *17 attorney who procured the money upon it, more than by the private bankers, with whom it was deposited by the attorney, and who may either have wished to draw upon it themselves at once, or to protect themselves against its being drawn upon by their depositor. There was, of course, no reason for certifying it for Mrs. Halpine’s protection, as there was clearly no intention of carrying out the matter of the bond and mortgage on her behalf.
It would not, however, in view of the peculiarity of the case, be satisfactory to determine it upon the assumption that the attorney did not have the check certified, and if he did I would hesitate unnecessarily to decide, that, where a person placed a check in possession of another it did not imply to the bank sufficient authority from the owner to present the check for certification. ' The issues here may be determined without passing upon such a proposition. It is only necessary to decide whether, upon any assumption, the certification in this case discharged the defendants.
The position of the defendants is, that upon certifying the check the presumption is, that the bank withdrew the amount from the credit of the defendants and placed it to the credit of the certified check, and that that resulted in the defendants’ discharge. It is argued that a check is given for presentation for payment and not for certification, and that if the holder choose to have it certified he uses the funds of the drawee in a manner unauthorized by him.
An important fact must be kept in mind. The defendants knowing that the check was inchoate in plaintiffs’ hands, contemplated a delivery to the payee according to the usual methods and delays of business, and the question is whether a person situated as plaintiffs could before delivery have a check certified without-discharging the drawer.
As a check is a chose in action, not an assignment *18 of a fund, it is executory or promissory. If it remain promissory after certification the drawer remains liable. This is clearly the case when the drawer has it certified" before delivery by him. It is also, clear, that if the holder choose voluntarily to take a certification or rely upon one already made, at a time when it is his duty to relieve the drawer from any risk connected with the funds remaining with the bank, the drawer is discharged. But there is a middle ground to be examined, and that is when by the contract the holder can refrain from presenting the check for payment, and yet the drawer is bound to keep the bank in funds.
The fact taken by itself, that the bank certifying transfers the amount from the drawer’s credit, does not absolutely work the discharge of the drawer. That is done by the acceptor in funds when he accepts a time bill. The discharge is prevented by the fact that the drawer contemplates this transfer of his funds, and impliedly contracts that the acceptor will pay it over, at maturity. And at maturity the holder must present and rfeceive payment, for he has no authority by the contract to allow the funds to remain longer with the acceptor at the drawer’s risk.
When a check is paid out, the presumption is that it is drawn against funds, and, therefore, the contract implies that the drawer will keep the funds there to meet the check. If the bank remain solvent, the drawer must keep the funds at the bank to meet the check, for six years, or if he withdraw them, he is liable upon the original demand if not upon the check. The holder brings the check to maturity at his pleasure. He may present forthwith if he please, or he may withhold.
The specific and the general rules as to presentation, demand and notice, that are applied to commercial paper, are based upon presumptions or proof of damage from an omission to present, or demand, or *19 notify. Notices and demands are excused in certain cases upon proof that no damage could occur.
In cases like the present, there is no damage or presumption of it, from the nature of the certification, as it was made at a time when the plaintiffs were at liberty to keep the check unpresented. The certificate was a promise of the bank to do, so far as the fund was concerned, the same thing that the drawer had promised. The modification of the original contract was in the drawer’s favor, as they become only secondarily liable.
Whether or not an entire omission by plaintiff to present for payment, after the check had been certified, would have discharged the defendants, does not call for d ecision. The bank took it in its possession the next day after certification, and shortly thereafter the defendants received and kept it. These periods were no greater than it is presumed the plaintiffs were at liberty to hold the check, before delivering it to the payee, and until delivery the defendants did not require it to be presented for payment, and were bound to keep the bank in funds. These are proper deductions from the case of First Nat. Bank v. Leech (52 N. Y. 350), in which Judge Peckham delivered the opinion. For that case was one where the check had been presented on the day on which it was specifically made payable by its terms. The most of the illustrations in the opinion are of checks stated to be due. There was no intention of applying the rules to a case where, as between the parties, it had not become a duty to present for payment, and payment, in fact, had not been demanded.
I perceive that in the opinion last cited are statements from which it might be argued, that the drawer is discharged if the bank withdraws from- his credit the amount of a check, at a time when the money might have been demanded. The opinion, however, was written to decide a case in which the check had *20 a day fixed for its payment. It was avowedly based upon the position, that allowing the funds to remain with the bank was an act for which the drawer was not responsible. But the drawer in a case like the present contracts that the funds shall remain for a certain time. They remain by his consent. The certification does not deprive him of a use of the funds for any time, that he did not intend. They remain for his benefit; while it might be otherwise if they remained for a period not contemplated by the parties, and therefore solely for the benefit of the holder.
The general custom is to have checks certified on the day they are received. This is generally done by or on behalf of the drawers., But in many cases the certification is procured on that day by or for the payee, and the check is then deposited, to be collected the next day. It is not thought that the drawer is to be discharged by such a certification, although the question can seldom arise, as it is very rarely that a bank becomes insolvent.
My general conclusions are that the certification did not, at the time it was made, lead to a transfer of * funds to the injury of defendants, and "that the funds would remain for the benefit and by the consent of defendants at least to the next day, that time being named as the limit within which the obligations of the defendant were absolute to provide for payment, irrespective of any omission by the holder, and that in this case the defendants contemplated some delay in the plaintiffs delivering the check to the payee or in returning it if not delivered.
If I am correct in the views expressed, it is not material that the plaintiffs gave no proof as to the present solvency of the bank in order to show that the defendants might still recover the amount from it. It sufficiently appeared that down to the time when the defendants took the check into their possession, the *21 bank was solvent, and it further appeared that up to that time there was no more delay than would have been allowed or expected by the defendants, for the plaintiffs to deliver to the payee, or to return to the defendants in case a delivery was not made, whatever the reason. In fact, it seems to me that' upon the defendants taking exclusive possession of the undelivered certified check that belonged to the plaintiffs, they assented to the use of the fund actually made by the bank. The fact that the check never went into the hands of the payee makes it unnecessary to determine what rights the defendants would have otherwise had to require presentment for payment to the bank before resorting to defendants. The rights of the defendants are confined to any damage, it appears or is presumed, followed any negligence of the plaintiffs. I do not see that any negligence can be attributed to the plaintiffs beyond their permitting or being responsible for the certification.
The case is not complicated by the plaintiffs becoming repossessed of the check before this action. The assignment made by Mrs. Halpine would have only justified an action upon the check as such, if it had been returned to plaintiffs, but it never was, and the plaintiffs would not have been bound to retake it from a wrong doer.
On the evidence, as I read it, interest should not have been calculated from an earlier date than January 34, 1877, that being the time of the first defendants’ demand. As I think the court below would have so held, if specific attention had been called to this, it is not necessary to make this modification depend upon the plaintiffs being deprived of the costs of the appeal.
With the reduction suggested the judgment should be affirmed with costs.
Freedman, J., concurred.