DONALD L. PAGE, Plaintiff, *v.* JAMES A. CLARK et al., Defendants.

(City Court of the City of New York, Trial Term, June, 1917.)

Conversion — who liable for — brokers — certificates of stock — title — sales.

> One who sells the property of another without his authority is liable in conversion though he acts under the authority of one claiming to be the owner and is ignorant of such person's want of title.

> A broker who receives for sale, from a person not authorized to pass title, a stolen certificate of stock upon which the name of the real owner has been forged and indorsed is liable to him for the reasonable value of said stock represented by the certificate, at the time of its sale by the broker.

MOTION for a new trial.

Wilber, Norman & Kahn (Robert Gibson, Jr., of counsel), for plaintiff.

Leon Forst, for defendants.

FINELITE, J. At the termination of the trial both sides moved for the direction of a verdict. The court entertained plaintiff's motion and directed a verdict in the plaintiff's favor in the sum of $1,594.47 and denied the motion of the defendants. The defendants thereupon moved for a new trial upon all the grounds

specified in section 999 of the Code of Civil Procedure, which motion the court entertained. It appears from the facts herein that the defendants are copartners doing business under the firm name of Clark, Childs & Co., having their principal office in the city of New York; that the plaintiff was and now is the owner and entitled to the possession of a certificate, No. B–17094, for twenty-five shares of Midvale Steel and Ordnance Company stock; that on or about the 18th or 19th day of December, 1915, the defendants, without authority of the plaintiff, obtained possession of said stock certificate and wrongfully disposed of and converted the same to their own use to the plaintiff's damage of $1,546.62, which amount was then the reasonable value of the stock represented by said certificate; that on or about the 18th or 19th day of December, 1916, the defendants obtained possession of said certificate of stock, B–17094, for twenty-five shares of Midvale Steel and Ordnance Company stock and caused the same to be sold on what is known as the " curb " for a sum of money in excess of $1,546.62, which money was received by the defendants on or about the 19th day of December, 1916; that when the defendants delivered the said certificate of stock to the purchaser thereof in accordance with said sale defendants guaranteed the signature " Donald L. Page " indorsed on said certificate; that said certificate of stock had been stolen from the plaintiff and the plaintiff's name was forged and indorsed upon the said certificate without the plaintiff's authority; that defendants received said certificate of stock about December 18, 1916, from a person not authorized to pass title thereto, and that the defendants have refused to restore said stock certificate or its value to the plaintiff, although duly demanded. The facts herein stated were proven by the plaintiff.

Walter C. Burbank, a member of the defendants'
firm, testified to the fact that a person came to him
with said certificate of stock aforesaid; that he
requested that the same be sold; that the same was
sold through "curb" brokers of the defendants at
62, on which sale the sum of $1,591.41 was realized;
that before said person came to defendants to sell
said stock his signature had been approved by an
employee of the defendants at their uptown office in the
city of New York. The defendants claim that this cer-
tificate for twenty-five shares of stock was sold by
them through their agent for the party they believed
to be Donald L. Page, and that for their services they
received the usual commission of $3.13; that the
defendants realized for their principal the sum of
$1,546.62, and $700 thereof was turned over to the
person who presented the certificate for sale, and a
check for the remaining sum of $846.62 was mailed
to the party who had presented said certificate for
sale, but who was not found at the address given,
and that the check was thereafter returned to the
defendants. It developed upon the trial that about
December 18, 1916, long after the completion of said
transaction, Donald L. Page, the real owner of
said certificate, appeared upon the scene and stated
to the defendants that the certificate had been taken
from a drawer in his room by one Raymond Young
and presented by him to the defendants without the
authority of the said plaintiff. The action is one in
conversion to recover the amount realized on said
certificate. The defendants claim that by merely
acting as brokers in the sale of said certificate for
their principal no liability exists against them
for the amount so realized, and defendants claim
further that an agent, acting in good faith for
another, whom he believed to be the rightful owner

of property, who sells the property of the rightful owner is not liable for conversion. Said certificate of stock had been stolen from the plaintiff and plaintiff's name was forged and indorsed on the said certificate without the plaintiff's authority, or any act or omission on his part justifying an interference with either his title or possession. The defendants as stockbrokers received said certificate on or about December 18, 1916, from a person not authorized to pass title, to whom the defendants paid $700 of said proceeds on December 18, 1916, and now have in their possession the balance of said proceeds. It appeared further from the evidence in the case the company cashed in said certificate on December 20, 1916, on the faith of the defendants' said guarantee of the correctness of the signature and issued a new certificate in place thereof to a Canadian concern. In *Mahaney* v. *Walsh,* 16 App. Div. 604, may be found a good definition of conversion, wherein it is pointed out that the action of trover is founded on the " right of property and possession, and any act of a party, other than the owner, which militates against this conjoint right in law, is a conversion. It is not necessary for a manual taking to make conversion, nor that the party has applied it to his own use. The question is, does he exercise dominion over it in exclusion of or in defiance of the owner's right? If he does, that is conversion." 4 Am. & Eng. Ency. of Law, 108. " Every unauthorized taking of personal property, and all intermeddling with it, beyond the extent of the authority conferred, in case a limited authority has been given, with intent so to apply and dispose of it as to alter its condition or interfere with the owner's dominion, is a conversion. * * * When property has been converted by one person and afterwards delivered to another, trover may be main-

tained against the latter as well as against him who originally converted it." *Kilmer* v. *Hutton,* 131 App. Div. 625, 636, 637. In *People* v. *Bank of North America,* 75 N. Y. 547, the court said, at page 566, that it was an " elementary principle that one who takes property (not negotiable instruments) from or under a thief or other person who has wrongfully converted the same, can have no better title than the wrongdoer had," and need not show a tortious taking or that the defendant acted in bad faith. If they had taken it into their own hands or disposed of it to others, or exercised any dominion over it whatever, they are guilty of a conversion. See to the same effect *Boyce* v. *Brockway,* 31 N. Y. 493, and *Spraights* v. *Hawley,* 39 id. 441, 447. Stock certificates, it has been held, are not negotiable instruments, and the title of the true owner of a lost or stolen certificate may be asserted against any one subsequently obtaining its possession, although the holder may be a *bona fide* purchaser. *Knox* v. *Eden Musee Americain Co.,* 148 N. Y. 441–446. The defendants contend that they had no prior knowledge of the facts that said certificate had been stolen from the plaintiff herein and relied upon the good faith of the person presenting it and, possessing no knowledge of the fact that the same had been stolen, liability against the defendants would not exist. But in *People* v. *Bank of North America, supra,* which was an action for conversion of some forged drafts which had been deposited by the forger in the bank for collection and were collected by the bank who credited the proceeds to the forger, who was a person other than the owner of the same, it was held that the defendant " had no knowledge of any fact existing prior to these indorsements which induced or could induce it to suppose that Phelps had authority to make the indorsements or to deal with

the drafts. It saw the indorsements, and acted upon them. It was induced to act by the unauthorized indorsements and not by anything preceding them or anything said or done by Raines. There is, therefore, the absence of the main groundwork of an estoppel. * * * It certainly is not a general rule of law that a person can be deprived of his property by an unauthorized transfer thereof, simply because he has not exercised ordinary care to prevent such transfer. I may carelessly intrust a dishonest person with my personal property, and thus put it in his power to sell it; and yet it has never been held that, in such case, my carelessness will deprive me of the right to reclaim my property, the person thus intrusted having neither the real nor apparent power to sell it. I may place my unindorsed bills in the hands of an agent, and thus place it in his power to forge an indorsement; and yet the indorsement would not bind me. The principle that when one of two persons, equally innocent, must suffer a loss by the act of a third person, he shall bear the loss who placed it in the power of such third person to perpetrate the act, does not apply to such cases. * * * But the further claim is made, on behalf of the defendant, that in dealing with these drafts, it acted in good faith, solely as agents, in the course of a public employment; and hence, that it ought not to be made liable for a conversion. But a bank is a private corporation, doing business solely for its own benefit. It may choose its own customers; and it may do or refuse to do any particular business offered. It was not bound to take these drafts, or in any way interfere with them. It was not like a common carrier who is bound to take and carry property tendered for carriage; and hence, it cannot claim the exemption from liability which has sometimes been claimed for common carriers charged

with conversion, for conveying property to its destination which had been delivered to it by one not the owner." *Hoffman* v. *Carow,* 22 Wend. 285; *Thorp* v. *Burling,* 11 Johns. 285, and cases therein cited. " The defendant took these drafts with the forged indorsements, from persons in the wrongful possession of them, collected the money upon them, and surrendered them up to the drawees; and that under such circumstances it can be sued for a conversion of them is well settled in this state. *Talbot* v. *American Exch. Bank,* 17 N. Y. 205; *Boyce* v. *Brockway,* 31 id. 490; *White* v. *Sweeny,* 4 Daly, 223; *White* v. *Mechanics' Natl. Bank,* id. 225." Conversion lies for an act of any party other than the owner, which militates against the owner's right of property and possession in the stock certificate. It is the act of exercising dominion over the certificate which forms the gravamen of conversion. *Briggs* v. *Jones,* 8 Misc. Rep. 261, 262, aff'd, 149 N. Y. 577. In *White* v. *Mechanics' Nat. Bank,* 4 Daly, 225, 228, it was held: " Although the bank does not appear to have acted in any other capacity or under any other claim than as collecting agent for the railroad company, it is legally liable for its acts on behalf of the principal who could confer no such authority." Although the defendants may have acted in no other capacity than as stockholders and solely as agents for the person wrongfully representing himself as the owner, yet they contributed to plaintiff's injury and are equally liable with their principal for their acts in behalf of such principal who could confer no authority to sell the certificate. *People* v. *Bank of North America,* 75 N. Y. 563. The earliest leading case upon this subject in this country is *Hoffman* v. *Carow, supra,* in which the defendant was held liable to the plaintiff although he, the defendant, acted solely as an auc-

tioneer and, as such auctioneer, paid over the proceeds to the thief in good faith and without notice of the felony. The principle as laid down in the *Hoffman* case has been cited with approval in *People* v. *Bank of North America, supra.* It is unfortunate for the defendants. The court believes that they acted in good faith when they performed the service as brokers and when they disposed of the certificate for the 25 shares of stock through its curb broker, but the law is plain and definite. It makes no difference with what amount of good faith a party may act, if it disposes of property obtained from a thief and realizes the money thereon without the consent of the rightful owner thereof, who receives no benefit from said sale, and liability exists against the party who obtained possession of said certificate and disposed of the same at the request of the wrongful owner thereof. It is no defense to an action for trover that the defendant acted as agent for another. If the principal is a wrongdoer, the agent is a wrongdoer also. The person is guilty of a conversion who sells the property of another without authority from the owner, notwithstanding he acts under the authority of the one claiming to be the owner, and is ignorant of such person's want of title. I have examined the authorities cited by the defendants and I fail to find wherein they secure immunity to the agent of the thief. The motion for a new trial must therefore be denied, with exception to defendants.

Motion denied.