### GRAVES *v.* THE AMERICAN EXCHANGE BANK.

The drawee of a bill of exchange is bound to ascertain that the person to whom he makes payment is the genuine payee or is authorized by him to receive it. It is no defence against such payee that the drawee, in the regular course of business and with nothing to excite suspicion, paid the bill to a holder in good faith and for value under the indorsement of a person bearing the same name as the payee.

It seems that it is forgery for a person not the payee of a bill of exchange but bearing the same name, to indorse and transfer it knowing that he is not the person intended as the payee.

Appeal from the Supreme Court. The complaint was for the conversion by the defendant, a banking corporation doing business in the city of New-York, of a bill of exchange dated Oct., 28, 1854, drawn upon the defendant by H. J. Miner a banker at Fredonia, Chautauque county, for the sum of $242.78 payable to Charles F. Graves or order at sight. The trial was at the Chautauque Circuit before Mr. Justice Bowen, a trial by jury having been waived. The plaintiff proved that at the date of the draft Charles F. Graves, the payee therein, resided at Mendota in the State of Illinois. Harvey C. Hurd, who resided at Perrysburgh in this state, was indebted to Graves and for the purpose of paying him pur-

chased of H. J. Miner the draft of the latter upon the defendant payable to the order of Charles F. Graves, without any further description by stating his place of residence or otherwise. Hurd mailed the draft at Perrysburgh in a letter addressed to Charles F. Graves at La Salle, Illinois, a place about fifteen miles from Mendota and connected therewith by a railroad. After mailing the letter Hurd learned that he had misdirected it, and procured it to be forwarded by the postmaster at La Salle to the post-office at Mendota. Hurd, who was a witness for the plaintiff, testified that he knew but one Charles F. Graves. It appeared that the latter had directed Hurd to remit the amount of his indebtedness by mail in the form of " a check on the Marine Bank Chicago, or any other way that was safe." The letter containing the draft was delivered from the post-office at Mendota to a person by the name of Charles F. Graves who was in the employment of the Illinois Central Railroad at Shipping Port, a place near La Salle, the latter being his post-office address. This Graves sold the draft at La Salle, for full value to one Baldwin, by whom it was indorsed to parties who presented it to the defendant in New-York and the defendant paid the same in the ordinary course of its banking business without notice of any interest or claim of the Charles F. Graves of Mendota. The latter, after such payment, assigned his interest in the draft to the plaintiff, who demanded it of the defendant and upon its refusal to deliver brought this action. The judge directed judgment for the plaintiff. The defendant having taken exceptions and appealed, the judgment was affirmed by the Supreme Court at general term in the eighth district, and the defendant appealed to this court. The cause was submitted on printed arguments.

*George N. Titus*, for the appellant,

*George Barker*, for the respondent.

Graves *v.* The American Exchange Bank.

COMSTOCK, J. Charles F. Graves of Mendota, Illinois, being the creditor of H. C. Hurd of Perrysburgh in the State of New-York, had directed the latter to send the amount of the debt to him in "a check on the Marine Bank of Chicago or any other way that was safe." It is quite clear that such a direction justified the debtor in procuring the draft now in question and sending it by mail to his creditor. It follows from this that the draft on being mailed properly addressed would become the property of the creditor and that he would take the hazard of its safe transmission. There was a mistake however in directing the package to the wrong post-office in Illinois, it being sent to La Salle instead of Mendota. If, in consequence of this mistake, it had never reached Mendota, Graves might very likely have insisted that his directions had not been complied with and that the draft therefore had not been placed at his risk. But the error was corrected by the person sending the draft, by a new direction given through the post-master at Perrysburgh, and the letter containing the inclosure was duly forwarded to the right place. When it reached there I see no reason to doubt that the draft became the property of the person to whom it was directed and for whom it was intended. He moreover asserted his title to the instrument by assigning it to the plaintiff thereby waiving his objections, if he could make any, founded on the supposed departure from his instructions in sending it forward. Upon all the facts there is. scarcely room for doubt that the debt of Hurd to Graves was satisfied and that being so, the title to the draft necessarily passed to Graves and from him to his assignee the plaintiff. On this point of title we have been referred to *Talbot* v. *The Bank of Rochester*, (1 *Hill*, 295). But in that case the certificate was mailed without the previous knowledge or request of the party to whom it was sent. It was therefore, I think, properly held that until actually received the title remained in the person who sent it.

The defendants on whom the draft was drawn paid it upon the indorsement of another Charles F. Graves residing at or near La Salle who wrongfully took it from the post-office at Mendota. Such a payment although made in good faith did not divest or impair the title of the true owner who had not seen or indorsed the paper. It is well settled that a forged indorsement does not pass a title to commercial paper negotiable only by indorsement, and does not justify the payment of such paper. ( *Talbot* v. *The Bank of Rochester, supra ; Canal Bank* v. *Bank of Albany,* 1 *Hill,* 287 ; *Story on Bills,* § 451 *and cases cited* ). In this case if the indorsement of the payee's name was not technically a forgery it was at all events spurious and false, and therefore equally inoperative to change the title. The point appears to have been expressly determined in *Mead* v. *Young* ( 4 *Term R.,* 28 ). The action was in favor of the person claiming to be the indorsee and holder of a draft against the acceptor. On the trial it was offered to be shown that the person who indorsed the bill to the plaintiff was not the real payee although he had the same name. The evidence was rejected and the plaintiff had a verdict. Upon argument before the King's Bench and the fullest consideration by the court it was held that the evidence should have been received, and that if the facts were as offered to be shown the plaintiff could not recover. The verdict was accordingly set aside. ASHURST, J., said: "in order to derive a legal title to a bill of exchange it is necessary to prove the hand writing of the payee, and therefore though the bill may come by mistake into the hands of another person though of the same name with the payee yet his indorsement will not confer a title." And BULLER, J., said: "I am of opinion that it is incumbent on a plaintiff who sues on a bill of exchange to prove the indorsement of the person to whom it is really payable." "Here it is clear" he added, "that the indorsement was not made by the same H. Davis to whom the bill was made payable, and no indorsement by any other person will give any title whatever."

Graves *v.* The American Exchange Bank.

In the same case the judges expressed the opinion that a false indorsement of this kind by a person of the same name as the payee constituted the crime of forgery.

It follows from the principle stated that the true owner of the draft in question had a right to claim it wherever he could find it. The defendants having got possession of it through a false or forged indorsement, and having refused to deliver it up or pay it to the owner, were liable for its conversion. No question of *laches* on the part of the owner in giving notice to the defendants was made on the trial, and in fact it appears that notice was given with all reasonable diligence.

The judgment must be affirmed.

ROOSEVELT, J. (Dissenting.) There were two persons of the name of Charles F. Graves. The drawer of the bill in question directed the American Exchange Bank to pay $240 to the order of Charles F. Graves. "Fredonia, N. Y.," was the designated residence of the drawer, and "New-York" that of the drawees. The payee had no designation but his name; none at all events was given by the drawer. The bank in good faith paid the draft to a person presenting it with the indorsement of Charles F. Graves, a genuine indorsement, but not the indorsement, it is said, of the genuine Graves. Which of the two, under these circumstances, should bear the loss—the drawer who carelessly omitted all designation, or the drawees who innocently paid the wrong person in consequence of such omission? As between these parties, the loss, it seems to me, should fall on the former. Nor do I perceive that the payee, the *quasi* assignee of the drawer, occupies any better position than his assignor. Hurd was his debtor, and bought the draft to remit in payment of the debt. Hurd directed the form. He did nothing to supply the drawer's omission, but aggravated the error by another of his own; he mailed the draft to Charles F. Graves, La Salle, Illinois, intending it, he

says, for Charles F. Graves, Mendota, Illinois, the two places being only fifteen miles apart. He candidly admits he " made a mistake in directing the letter, and that he should have directed it to Mendota instead of La Salle." He thus by his own act put the draft into the hands of the La Salle Graves, and held out the La Salle Graves as the real payee. Can he complain then, that the Exchange Bank recognized his indorsement? Must they pay twice because he, after " full warning," as he admits, chose to be careless of his own interests? Or would it not be more just that he himself should pay the Mendota Graves to whom he confessedly was indebted, and whose debt confessedly was not discharged by this remittance to the wrong person, and who swears that " he never had possession of the draft, and never authorized any one to indorse his name upon it, and never authorized any one to take possession of it." How, too, I would ask, with such a statement sworn to by him on the trial, can he maintain an action of trover, resting his complaint on the averment that he had been "in possession" as the legal owner?

The judgment should be reversed.

SELDEN and STRONG, Js., expressed no opinion.

Judgment affirmed.