(157 App. 448.)

HARTFORD v. GREENWICH BANK OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 13, 1913.)

1. BANKS AND BANKING (§ 138*)—PAYMENT OF CHECKS.

R., an employé, having charge of the checking up and verifying of bills for goods purchased had billheads printed under the name of W., rented a post office box in that name, and opened an account in his employer's bank where he was introduced as W. He then prepared a number of fictitious bills in the name of W. against his employer, approved them, and on the faith of his approval checks payable to W. were mailed to the post office box where they were received by R., who indorsed them in the name of W., deposited them in the bank, and subsequently withdrew his deposit. *Held*, that the bank was entitled to charge such checks against the employer's deposit, since it was intended by the depositor that they should be paid to the person from whom it believed that it had purchased goods, and they were paid to that person; it not. being the case of a check drawn to a fictitious or nonexisting person,. as there was an actual person calling himself W., although that was not. his real name.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§. 398–405; Dec. Dig. § 138.*]

2. BANKS AND BANKING (§ 119*)—DEPOSITORS—RELATION BETWEEN BANK AND DEPOSITOR.

The relation between a bank and a depositor is in a strict sense that of debtor and creditor.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 289– 292; Dec. Dig. § 119.*]

3. BANKS AND BANKING (§ 138*)—DEPOSITORS—PAYMENT OF CHECKS—DUTY OF BANK.

In disbursing a depositor's funds, a bank can pay them only in the usual course of business and in conformity to the depositor's directions,. and can charge against the depositor's account only payments made at the time when, to the person whom, and for the amount authorized by him.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§. 398–405; Dec. Dig. § 138.*]

4. BANKS AND BANKING (§ 138*)—DEPOSITS—PAYMENT OF CHECKS.

In determining whether a bank has paid out its customer's funds without authority, the question is usually one of the depositor's intention in. issuing a check, the bank being liable to refund the amount to the depositor if it pays to any one other than the payee intended, even though it pays to a person having the same name.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 398–405; Dec. Dig. § 138.*]

5. APPEAL AND ERROR (§ 1139*)—DISPOSITION OF CAUSE—ATTACHING CONDITIONS.

Where under the pleadings in an action a small balance was admittedly due plaintiff, but this not having been called to the trial court's attention it was evidently overlooked and a verdict directed for defendant, the judgment would not be reversed for the error,, but defendant as a condition of the affirmance of the judgment would be required to stipulate that its judgment would not thereafter be interposed as a bar to the recovery of such sum.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4448; Dec. Dig. § 1139.*]

Ingraham, P. J., and Laughlin, J., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Appeal from Trial Term, New York County.

Action by John A. Hartford against the Greenwich Bank of the City of New York. From a judgment for defendant on a directed verdict and an order denying a new trial, plaintiff appeals. Affirmed conditionally.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Herbert Barry, of New York City (Charles H. O'Connor, on the brief), for appellant.

Jesse S. Epstein, of New York City, for respondent.

SCOTT, J. [1] Plaintiff's assignor, the Great Atlantic & Pacific Tea Company, was a depositor in the defendant bank during the months of November and December, 1911, and for a considerable time prior thereto. The question in the case is whether or not the bank was justified in paying, and entitled to charge against the account of the Tea Company five checks, for the aggregate amount of $8,060.50, drawn by said company to the order of James Wilson. That the checks bore the genuine signature of the Tea Company is undisputed, and it conclusively appears that the company was induced to draw them through the fraud of Edward Rypinski, one of its employés, in the belief that it was indebted to one James Wilson for the several amounts represented by the checks. The details of the fraudulent transactions appear without contradiction.

The Tea Company conducted a premium department through which it purchased quantities of goods to be given away to customers. Edward Rypinski was employed in the auditing department, and had especial charge of receiving, checking up, and verifying bills for goods purchased for the premium department. He made very elaborate preparations for defrauding his employer. He procured to be printed billheads bearing the name of James Wilson, and the address, Room 1012 Fuller Building, New York. He rented a post office box in the name of James Wilson, giving to the postal authorities as reference one Swarz, whom he knew to be absent from the city, and himself under his real name of Rypinski. He opened an account in the defendant bank under the name of James Wilson. He was introduced to the bank by his brother George Rypinski passing as George Friedman. This brother was married to a woman who carried on a business under the name of "Jeannette," and who had an account in the defendant bank in her maiden name of Jeannette Friedman. Having thus prepared the way, Rypinski proceeded to defraud the Tea Company into giving him a check for $1,543.50. He made out a bill upon one of his fictitious letter heads purporting to show that James Wilson had sold goods, to the value stated, to the Tea Company. This bill he certified in the usual manner, and such routine steps were taken that in due course a check for the amount indicated was made out to James Wilson, signed and mailed. It reached the post office box which Rypinski had hired, whence it was taken by him, indorsed with the name James Wilson, and deposited to the credit of the account opened by Rypinski, under the name of James Wilson, with the defendant

bank, and the amount charged against the Tea Company's account. By a similar course of proceeding four other checks were fraudulently obtained by Rypinski, deposited with the defendant, and charged against the Tea Company. The aggregate amount thus obtained was over $8,000, all of which was subsequently drawn out and spent by Rypinski. The question involved in this appeal is whether the Tea Company represented by plaintiff or the defendant bank should bear the loss.

[2, 3] The relation between a bank and its depositor is well established, and is in a strict sense that of debtor and creditor. "In disbursing the customer's funds, it (the bank) can pay them only in the usual course of business and in conformity to his directions. In debiting his account, it is not entitled to charge any payments except those made at the time when, to the person whom, and for the amount authorized by him." Crawford v. West Side Bank, 100 N. Y. 50, 53, 2 N. E. 881, 53 Am. Rep. 152.

[4] When a claim is made, as is made now, that the bank has paid out its customer's funds without authority, the question generally resolves itself into what was the intention of the drawer when issuing the check. If paid to one other than the payee intended by the drawer, the bank is commonly held liable to refund. Thus if there be two persons of the same name, and the drawer meant that the sum represented by the check should be paid to one of them, the bank cannot lawfully pay to the other one, and, if it does, must refund. Graves v. American Exchange Bank, 17 N. Y. 205. In many cases it has been held that if the name of the payee be forged, or if the amount for which the check was drawn be altered, or if the date of payment be changed, no matter how skillfully the forgery or alteration may be effected, the bank must refund if it wrongfully pays. In the present case none of these conditions have been shown. On the contrary, the checks were paid to the very person to whom the Tea Company intended they should be paid, viz., the person from whom it believed that it had purchased goods. It is true that it had never received any goods from the person in whose favor it drew the checks, and that it had been cheated into believing that it had so bought them, but it is very clear that no liability can attach to the bank for that fraud. Having, however, been cheated into the belief that it had purchased goods from and owed money to one James Wilson, it intended when it uttered the check that it should be paid to the person from whom, as it then believed, it had made the purchase. That person was the identical person to whom the checks were paid. This is not strictly speaking the case of a check drawn to a fictitious or nonexistent person. There was an actual person, calling himself James Wilson, although that was not his real name, and it was that person to whom the Tea Company intended its checks should be paid. It would serve no useful purpose to cite at length the many cases dealing with the liability of banks for wrongfully paying out their customers' funds. Some of them were reviewed by this court in Sherman v. Corn Exchange Bank, 91 App. Div. 84, 86 N. Y. Supp. 341, and the rule that the intention of the drawer must prevail was applied in Mercantile National Bank v. Sil-

verman, 148 App. Div. 1, 132 N. Y. Supp. 1017. In that case the defendant had drawn checks to the order of two officers in the army, supposing that he was purchasing an assignment of their pay for certain months. He had had negotiations with an impostor who personated one of the officers, and he had sent the checks to this impostor believing him to be what he represented himself to be and that he would collect the checks. It was held, however, that the form of the checks indicated the intention of the drawer that they should be paid to the payees named therein, and that payment to the impostor was unauthorized. That case was far different from this. What we have here is a successful fraud perpetrated upon the Tea Company by one of its own employés, by which it was induced to believe that it owed that employé certain sums of money. The checks in suit were intended to be paid in satisfaction of this supposed debt, and were in fact paid to the person for whom they were intended. No liability attaches to the bank under these circumstances.

[5] Attention is now called to the fact that under the pleadings a small balance of $344.77 is admittedly due to plaintiff. This was evidently overlooked upon the trial, and no request made for a direction of a verdict for the amount. Under these circumstances, we do not feel justified in reversing the judgment and ordering a new trial merely for the purpose of correcting this oversight, but justice requires that defendant as a condition of the affirmance of the judgment should stipulate that said judgment shall not hereafter be interposed as a bar to the recovery by plaintiff of the sum admittedly due. Upon filing such a stipulation the judgment appealed from will be affirmed with costs.

McLAUGHLIN and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). This is an action on an assigned claim of the Great Atlantic & Pacific Tea Company, a corporation having its principal office and place of business in Jersey City, N. J., to recover the balance of its deposit and drawing account with the defendant. The defendant charged the account of the plaintiff's assignor with five checks, aggregating $8,060.50, drawn by it payable to the order of James Wilson. The plaintiff's assignor contested the right of the bank to charge these checks to its account, and that is the question presented by the action. Although counsel for the plaintiff moved for a direction of a verdict at the close of the evidence, on that motion being denied, he saved the rights of his client with respect to having the jury pass upon the controverted evidence by requesting leave to go to the jury on certain issues stated and on all controverted points before the court directed the verdict on the defendant's motion.

The question presented by the appeal is therefore whether as matter of law the defendant was warranted in charging said checks to the account of the plaintiff's assignor. The uncontroverted evidence shows that the plaintiff's assignor was induced by the fraud of one Edward Rypinski, who was in its employ in the auditing department, and had special charge of receiving and checking up and verifying bills for goods purchased for a so-called premium department, to draw the

checks in question on the false representations that James Wilson was engaged in business at Room 1012 Fuller Building, New York City, and had sold and delivered to the Tea Company merchandise, upon which it became indebted to him in the amounts of the checks; that said Rypinski, with a view to enabling him to consummate the fraud, had prepared printed bill heads in the name of said Wilson with said address, upon which he falsely filled out accounts showing his employer to be indebted to Wilson, and attached to each a slip stating that checks should be forwarded to Wilson at post office box 12, Station G, New York City, and then O. K.'d the bills and placed them with other bills to be paid, and in the ordinary course of business the cashier of the company drew checks for the amounts of the bills payable to Wilson, and the checks were mailed as directed on said slip; that said Rypinski, with a view to enabling him to receive the checks so mailed, hired the box in the post office under the name of James Wilson, for which he signed an application in writing, falsely representing himself to be James Wilson; that on thus receiving his first check he called at the bank accompanied by his brother George, whose wife, who was known as Jeannette Friedman and did business under the name the Jeannette Company, had a deposit account with the bank, and George Rypinski introduced himself to Mr. Austin, the vice president of the bank, to whom he was not known, as George Friedman, the husband of Jeannette Friedman, and thereupon introduced his brother Edward to Mr. Austin as James Wilson, and the latter was then permitted to open an account under the name James Wilson, by depositing to his credit the first of these checks, which was for $1,543.50, which he indorsed "James Wilson," the name of the payee of the check, and that the other checks were obtained and deposited in the same manner, and all were charged to the account of the Tea Company and the proceeds deposited to the account of James Wilson, and subsequently drawn out by Edward Rypinski.

It is contended by the learned counsel for the respondent that the plaintiff's assignor, although deceived by its employé, intended to draw the checks to the order of James Wilson, and intended that they should be paid to the person represented by its employé as bearing that name, who he falsely represented had sold and delivered merchandise to it, and that, therefore, the checks were properly paid by the bank. There is a fallacy in this reasoning. The plaintiff's assignor was fraudulently deceived into believing that Wilson had sold and delivered to it merchandise, and was entitled to be paid therefor the amounts for which the checks were drawn, and it did not intend to draw the checks, or to have them paid, to Edward Rypinski. Although the latter, by the representations which he made, intended himself as the vendor of the merchandise, and as the person entitled to receive pay therefor, and in the name of Wilson prepared the billheads and presented the accounts, and rented the post office box, and opened the bank account, and contemplated opening a mail order business for the sale of rugs under that name, still Wilson, so far as the plaintiff's assignor is concerned, on these facts was a fictitious person, and Rypinski's indorsement of the name of the payee was a forgery and did not

justify the bank in paying the checks. Shipman et al. v. Bank S. N. Y., 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821. The rule that a check payable to a fictitious payee is deemed payable to bearer has no application where the drawer of the checks is not aware that the payee is fictitious. Shipman et al. v. Bank S. N. Y., supra.

Although it seems a harsh rule with respect to the liability of the bank, it is now the well-settled law in this jurisdiction, based on the requirements of our business methods, that the intention of the drawer of, a check or draft with respect to the payee is controlling; and that indorsees, transferees, and the drawee, even though all due care be exercised and the check or draft be received from one lawfully bearing precisely the same name as that of the payee, take or pay it at their peril, unless the circumstances are such that the drawer is estopped from questioning their title or the payment, and they must depend for protection from such liability on the financial responsibility of the person from whom they receive it and the other parties to it. Graves v. American Ex. Bank, 17 N. Y. 205; Gallo v. Brooklyn Savings Bank, 199 N. Y. 226, 92 N. E. 633, 32 L. R. A. (N. S.) 66; Mercantile v. Silverman, 148 App. Div. 1, 132 N. Y. Supp. 1017.

In Gallo v. Brooklyn Savings Bank, supra, the drawer, a savings bank, accepted the surrender of a pass book of one of its depositors for settlement of the account from his nephew who had stolen it, and represented that he was the depositor. The bank discovered that his age did not correspond with that given when the account was opened and he then represented that his uncle, who had opened the account for him, had evidently given his own age. The bank was not satisfied with his identity, and for that reason, instead of giving him the balance of the account in money, gave him a check on another bank. His Christian name was not the same as that of his uncle who was the depositor, but he had been known by the same given name, to some extent, and he succeeded in having the check cashed. The drawee honored the check; and, on discovering that the original indorser was not the payee intended, it recovered of the bank to whom it made the payment, and that bank, in turn, recovered of its depositor who had been fraudulently induced to cash it for the impostor, and he then sued the drawer and contended, among other things, that having dealt with the impostor as its depositor, and having delivered the check to him, it was estopped from denying that he was; but the court held otherwise and ruled that, notwithstanding what took place, the drawer did not intend to make him the payee unless he was in fact its depositor.

In Mercantile v. Silverman, supra, we held that although a drawer of checks, who had been induced to make loans on forged salary vouchers on false representations made by letter to the effect that the applicants therefor were army officers, sent the checks by mail to the impostor under the assumed name of one of the officers, he did not intend the persons to whom he sent the checks as the payees unless they were in fact such army officers, and that the drawee was not authorized to honor the checks and to charge them to his account.

In that case, as in this, the checks could not have fallen into the hands of the impostor but for the violation of the United States post office regulations, and could not have been collected without the commission of the crime of forgery. Since plaintiff's assignor did not intend to make its employé Rypinski the payee of the check under the name Wilson, by which it did not know him, and on the rule that the payee is the party intended as such by the drawer, it cannot be held that Rypinski was the payee.

The case of Sherman v. Corn Exchange Bank, 91 App. Div. 84, 86 N. Y. Supp. 341, is distinguishable upon the ground that there the check was drawn in payment for horses purchased and he was the payee intended who received and indorsed the check, and it was held that he misrepresented his identity, although not his name, and that if it had not been supposed that he was the Baldwin, he represented himself to be the purchase would not have been made, was no defense to an action on the check, by a bona fide holder for value, against the drawer.

The decision in First National Bank v. American Exchange Bank, 170 N. Y. 88, 62 N. E. 1089, is likewise distinguishable, in that the bank which drew the draft intended its principal, who resided at a distant point, as the payee and transmitted the draft by mail to its principal as the proceeds of a loan which he had negotiated on premises in the vicinity of the bank on false representations with respect to his title to the effect that he was the owner, and the forged bond and mortgage had been forwarded by him to the bank for delivery and to remit the proceeds.

As there is no evidence conclusively establishing negligence on the part of the depositor, who was cunningly defrauded by its employé, and there is no evidence estopping it, as matter of law, from questioning the right of the bank to charge the checks to its account, the learned court erred in directing a verdict for the defendant.

I therefore vote to reverse the order and judgment, and grant a new trial.

INGRAHAM, P. J., concurs.