UNITED CIGAR STORES COMPANY, Respondent, *v.* AMERICAN RAW SILK COMPANY, INC., Appellant.

First Department, July 11, 1918.

**Bills and notes — validity of check made to fictitious person.**

Where a check is made to a fictitious person not known to the maker to be such, it is not a check to bearer passing upon delivery, and the transferee thereof under a forged indorsement of the name of the fictitious payee made by the impostor who procured the execution of the check is not a holder " in due course," and hence cannot enforce payment.

CLARKE, P. J., dissented, with memorandum.

APPEAL by the defendant, American Raw Silk Company, Inc., from a judgment of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of November, 1917, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District.

*Douglass Newman* of counsel [*Dorman & Dana,* attorneys], for the appellant.

*Edward F. Spitz* of counsel [*Charles Levy* with him on the brief; *Stroock & Stroock,* attorneys], for the respondent.

SMITH, J.:

On December 14, 1916, a man representing himself as Lieut. Peterson of the United States Navy applied to the defendant for moneys for the establishment and maintenance of a navy tuberculosis camp. He stated that he represented Lieut. R. L. Parks, Q. M., United States Navy. The defendant gave a check for $100 to the order of Lieut. R. L. Parks, Q. M., United States Navy. The defendant then gave the check to Peterson with specific instructions to deliver it to Parks for the purpose of being used as a donation to the fund. The defendant made and delivered the check, believing that such payee, " Parks," represented a real, and not a fictitious person, able to. receive, negotiate and indorse said check. It turned out that there was no such person as Lieut. R. L. Parks; that there was no tuberculosis camp fund; that the

man " Peterson " was an impostor. " Peterson " procured the check to be cashed by the plaintiff, the United Cigar Stores Company, claiming to be a representative of Parks, after having indorsed " Parks' " name thereupon. The defendant refused to pay it, after finding out the imposition, and this suit was brought to recover the moneys paid upon the check. The Municipal Court granted judgment for the plaintiff, which has been affirmed by the Appellate Term.

In *Shipman* v. *Bank of State of New York* (126 N. Y. 318) a firm of lawyers had a confidential clerk who was in charge of a branch of the business in examining titles, making loans on bonds and mortgages, and purchasing real estate for clients. This confidential clerk, named Bedell, had checks made out, some to fictitious and non-existent payees, and some to payees who were in fact actual persons. He forged the names of those actual persons upon the checks made to them and the names of the fictitious payees or non-existent persons upon the checks made to their names. These were all paid by the drawee bank upon which they were drawn and charged against the plaintiffs' account. The plaintiffs, therefore, brought this action to recover from the bank the moneys paid upon these checks. There were sixteen of these checks made to fictitious or non-existent payees. The court in that case allowed the makers of the checks to recover the full amount paid, both upon these checks made to fictitious payees and upon the checks made to real persons. This case decides four propositions of law. *First,* that a check made to a fictitious person, not known to the maker to be such, is not a check to bearer, passing upon delivery. This rule of law has now been codified. (Neg. Inst. Law [Consol. Laws, chap. 38; Laws of 1909, chap. 43], § 28.) *Second,* that the intention of the maker was to make the checks payable to the persons named and that " plaintiffs * * * did not intend that they should go into circulation or be paid by defendant otherwise than through a delivery to and indorsement by the payee named." *Third,* that " the defendant does not occupy any different position with reference to the checks payable to fictitious payees than it does with reference to those payable to real parties whose indorsements were forged." *Fourth,* that " the indorsement of

the names of the fictitious payees upon the checks, with intent to deceive and to put the checks in circulation, constituted the crime of forgery " and gave no authority to the bank to make payment thereupon. It is not important whether the indorsing of the check by the impostor constituted forgery. As long as the check was not indorsed by the intended payee no title passed, otherwise the check would be in effect payable to bearer which this case holds it is not.

The case at bar presents exactly these same issues, except that here the suit is brought by a transferee of the check against the maker, after the bank refused to pay the same. But this does not alter the rule of law because, if the transferee may recover against the maker, it follows of necessity that the bank would be authorized to pay the same. In the *Shipman* case the checks were paid by the drawee bank after they had passed through several other banks, presumably holders for value without notice. But neither in the *Shipman* case nor in the case at bar could the transferees become holders " in due course," within the protection of the law merchant, because they never got title to the checks. (Neg. Inst. Law, § 42; *Shipman Case, supra; Seaboard Nat. Bank* v. *Bank of America,* 193 N. Y. 26.) Unless then the rule of law announced in the *Shipman* case has been overruled, this judgment must be reversed. Respondent, however, claims that this case comes within the case of *Hartford* v. *Greenwich Bank* (157 App. Div. 448; affd. on opinion below, 215 N. Y. 726), and if necessary claims that the *Shipman* case is to be deemed to that extent modified. The *Hartford* case, however, is a border line case and should not be extended beyond the facts thereof. It clearly was not intended to overrule the law as stated in the *Shipman* case. In the *Hartford* case the plaintiff's assignor, the Great Atlantic and Pacific Tea Company, had a clerk by the name of Rypinski in its employ. This company conducted a premium department through which it purchased quantities of goods to be given away to customers. Rypinski was in the auditing department and had special charge of receiving, checking up and verifying bills for goods purchased for this department. He procured to be printed billheads bearing the name of James Wilson, and the address 1012 Fuller

Building, New York.  He rented a post office box in the name of James Wilson, giving to the postal authorities as reference one Swarz and himself, under his real name of Rypinski. He opened an account in the defendant bank under the name of James Wilson.  Under these circumstances, he procured his employer, upon fictitious bills from this James Wilson, to give checks payable to James Wilson, which were sent to Wilson and reached this post office box, which .the employee had himself rented in the name of James Wilson.  He forged the name of James Wilson and collected the checks, and Rypinski's employer, through its assignee, Hartford, sued the bank for the moneys paid upon the checks.  A recovery was not allowed in that case upon the ground that the checks were intended for a person who represented himself as Wilson, and that person turned out to be Rypinski, and being so intended and being indorsed by that identical person, the bank was authorized to pay the checks. · It may be difficult to follow the reasoning which .would distinguish this case from checks made to a fictitious non-existent person, but the distinction was made by Mr. Justice SCOTT in this court and was followed by the Court of Appeals upon the ground, as stated, that the intention was that the checks should be payable to the man representing himself as Wilson, and that that was a real person, who in 'fact indorsed the name of Wilson upon the checks.  In the opinion, Mr. Justice SCOTT says: "Having, however, been cheated into the belief that it had purchased goods from and owed money to one James Wilson, it intended when it uttered the check that it should be paid to the person from whom, as it then believed, it had made the purchase. That person was the identical person to whom the checks were paid. *This is not strictly speaking the case of a check drawn to a fictitious or non-existent person.*  There was an actual person, calling himself James Wilson, although that was not his real name, and it was that person to whom the tea company intended its checks should be paid."

It appears in the case at bar that there was no actual person calling himself R. L. Parks.  One thing is clear, and that is that it was never intended that this check should be paid to this man fraudulently representing himself as Lieut. Peterson.  This check, intended to be paid to Lieut. R. L.

Parks in charge of a tuberculosis fund for the navy, has never been indorsed by Parks, or any one assuming to be Parks, in any of these negotiations. It is, therefore, clearly distinguishable from the *Hartford* case in the essential attribute which determined the liability in the *Hartford* case. The case, as I read it, comes squarely within the *Shipman* case, wherein the checks were made to fictitious non-existent persons, and no title has ever passed to this plaintiff upon which it can recover.

In *Mercantile National Bank* v. *Silverman* (148 App. Div. 1; affd., 210 N. Y. 567) a private bank had been accustomed to purchase claims of officers of the United States Army for their salaries to grow due in the future and to take assignment of their vouchers therefor. In that case an impostor, assuming to sell vouchers of certain men in the army, procured checks payable to these men, whose names, without authority, he indorsed, and the bank paid the checks. The bank thereafter sued the maker of the checks and it was held that the bank could not recover because the checks were obtained by fraud and the indorsement was without authority. It is true that in that case there were existing persons to whom the checks were made payable and to that extent the case differs from the case at bar, but in the *Shipman* case the opinion states that the bank occupies no different position with reference to the checks payable to fictitious payees than it does with reference to those payable to real parties whose indorsements were forged. Neither in the *Shipman* case, the *Silverman* case, nor in the case at bar could there have been any intention to make the checks payable to the person who in fact indorsed the checks and received the money thereon.

The determination of the Appellate Term should be reversed, with costs, and judgment directed in favor of the defendant dismissing complaint, with costs.

LAUGHLIN, PAGE and SHEARN, JJ., concurred; CLARKE, P. J., dissented.

CLARKE, P. J. (dissenting):

I think this case falls within the doctrine of *Hartford* v. *Greenwich Bank* (157 App. Div. 448; affd., 215 N. Y. 726)

and *Holub-Dusha Co.* v. *Germania Bank* (164 App. Div. 279) and, therefore, the determination should be affirmed.

Determination and judgment of Municipal Court reversed, with costs in this court and in the Appellate Term to appellant, and judgment directed in favor of defendant dismissing the complaint, with costs.