BESSIE M. STRANG, Appellant, *v.* WESTCHESTER COUNTY
NATIONAL BANK, Respondent.

**Banks and banking — bills, notes and checks — payment
of check on forged indorsement of fictitious payee — indorse-
ment of draft given by payee in consideration of loan made
upon security of bond and mortgage executed in name of
fictitious mortgagors by attorney who represented that mort-
gagors were clients for whom he was acting — when indorse-
ment of such draft as well as execution of bond and mortgage
constituted forgery.**

Plaintiff had a deposit account in the defendant bank. An attorney
represented to her that he wanted a loan upon bond and mortgage
for a client. Plaintiff made a draft payable to her own order which
she indorsed to the name of the alleged borrower. The attorney
gave her a bond purporting to be signed by the borrower and his
wife and a mortgage upon certain real estate, also purporting to
have been signed and acknowledged by them before a notary public,
as security for the bond and also made out and delivered to plaintiff
a certificate that the mortgagors were the owners of the mortgaged
property, free from all incumbrances. There were no such persons.
The owner of the property was the attorney himself, and his pretended
clients were fictitious. The draft was paid by defendant upon the
indorsement of the attorney in the name of the fictitious client. The
plaintiff, upon becoming cognizant of the facts, notified the defendant
that the money had been paid without right, and brought this action
to recover the money charged to her account. Upon these facts it
follows that plaintiff is entitled to judgment against defendant. The
defendant was without authority to disburse the plaintiff's money
except in accordance with her orders, and acted at its own peril if
it paid on a forged indorsement. Under the evidence the attorney
committed the crime of forgery when he signed the names of the ficti-
tious borrower and his wife to the bond. He committed the crime
again when he signed their names to the mortgage, adding a certificate
of acknowledgment in the name of a fictitious notary public, and
also committed another forgery by his indorsement of the draft.
These were none the less forgeries because it turned out, in the end,
that the borrower was a myth. The plaintiff had no knowledge of
this and had no thought that she was accepting the bond and mort-
gage of the attorney himself, since under the arrangement the person

named in the bond and mortgage, as the owner of the property, was to be the holder of the draft. (*Hartford* v. *Greenwich Bank of City of N. Y.*, 157 App. Div. 448; 215 N. Y. 726, distinguished and limited.)

*Strang* v. *Westchester Co. Nat. Bank*, 191 App. Div. 787, reversed.

(Submitted December 14, 1922; decided February 27, 1923.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 1, 1920, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived, and granting a new trial.

*P. A. Anderson* for appellant. Defendant is liable to plaintiff, a depositor, for the payment of a check upon a forged indorsement. (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318; *U. C. S. Co.* v. *Am. R. S. Co.*, 184 App. Div. 217; 229 N. Y. 532; *Holub-Dusha Co.* v. *Germania Bank*, 164 App. Div. 292; *Nat. Surety Co.* v. *Nat. City Bank*, 184 App. Div. 771; *Seaboard* v. *Bank of America*, 193 N. Y. 26; *Kobre* v. *Corn Ex. Bank*, 79 Misc. Rep. 212; *Kearny* v. *Met. Trust Co.*, 110 App. Div. 236.) The indorsement by Nathan P. Bushnell of the name " Homer E. Remsen " on the draft, with intent to deceive and put the draft in circulation, constituted the crime of forgery. (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 331; *People* v. *Brown*, 8 Hun, 562; *People* v. *Browne*, 118 App. Div. 799; *Nat. Surety Co.* v. *Nat. City Bank*, 184 App. Div. 771.)

*Charles E. Scribner* for respondent. The draft was indorsed and collected by the person plaintiff intended. The defendant bank was justified in charging this draft to plaintiff's account. (*Hartford* v. *Greenwich Bank,* 157 App. Div. 448; 215 N. Y. 726; *Holub-Dusha Co.* v. *Germania Bank*, 164 App. Div. 279; *Gotthelf* v. *Shapiro*, 136 App. Div. 1.) Bushnell's indorsement did not constitute forgery. (*Gottheld* v. *Shapiro*, 136 App. Div. 1;

*People* v. *Peacock*, 6 Cow. 72; *Graves* v. *Am. Ex. Bank*, 17 N. Y. 205; *Beal* v. *State*, 138 Ala. 94.)

Cardozo, J. Plaintiff had a deposit account with the defendant bank. She informed the cashier that she wished to make a draft for $1,100, payable to one Homer E. Remsen, to whom she was to loan the money on bond and mortgage. The cashier told her to make the draft to her own order, and to indorse it to the order of Remsen. She brought the draft thus indorsed to one Bushnell, a lawyer. Bushnell gave her in return a bond, signed, as it seemed, by Homer E. Remsen and Alice, his wife; exhibited a mortgage signed in the same way; and made out a certificate that the mortgagors were the owners of the mortgaged property, free from all incumbrances. In truth, there were no such persons. The owner was Bushnell, and his supposed clients were fictitious. He told the plaintiff that he had once been the owner of the property, but that he had sold it two years before to Remsen, and owned it no longer. The draft was paid by the bank upon the indorsement of the attorney in the name of the fictitious client. His suicide a few days afterwards laid bare his crime. The plaintiff notified the bank that the draft had been paid without right, and sued to recover the money charged to her account. The Trial Term gave judgment in her favor. The Appellate Division reversed and granted a new trial. An appeal to this court followed.

We think the appeal must be sustained. The defendant was without authority to disburse the plaintiff's money except in accordance with her orders. It acted at its peril if it paid upon a forged indorsement (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318). It did pay upon such an indorsement, and must answer for the consequences. A different case would be here if the plaintiff had dealt with Bushnell in the belief that he was Remsen, intending to make payment to the person then before her, though lured

into that intention by his assumption of a fictitious name. In such circumstances, nice distinctions would have to be drawn to determine whether the crime was forgery or something else (*Phelps* v. *McQuade*, 220 N. Y. 232; *Mercantile Nat. Bank of the City of N. Y.* v. *Silverman*, 148 App. Div. 1; affd., on opinion below, 210 N. Y. 567; *First Nat. Bank* v. *Am. Ex. Nat. Bank*, 170 N. Y. 88; 3 Williston on Contracts, § 1517). That is not what happened. The plaintiff did not intend to deal with Bushnell, either under that name or any other. She did not know Remsen, who was represented to be the owner, but she knew that he was not Bushnell, for Bushnell so informed her. He told her, as we have seen, that the property had once been his, but that he had parted with his ownership. In these circumstances, the crime of forgery was committed when he signed the names of Homer and Alice Remsen to the bond which charged them with the debt (*United Cigar Stores Co.* v. *American Raw Silk Co., Inc.*, 184 App. Div. 217; affd., 229 N. Y. 532; *Nat. Surety Co.* v. *Nat. City Bank*, 184 App. Div. 771; *Mercantile Nat. Bank* v. *Silverman, supra; Phelps* v. *McQuade, supra*). The crime was committed again when he signed their names to the mortgage, adding a certificate of acknowledgment in the name of a fictitious notary. It was committed once again upon his indorsement of the check. What he did was not the less a forgery because it has turned out in the end that the borrower was a myth (*Shipman* v. *Bank of State of N. Y., supra; Seaboard Nat. Bank* v. *Bank of America*, 193 N. Y. 26; *United Cigar Stores Co.* v. *American Raw Silk Co., Inc., supra; People* v. *Browne,* 118 App. Div. 793, 799; Penal Law, § 883; Cons. Laws, ch. 40). The myth did not exist with the consent or knowledge of the lender (Neg. Inst. Law [Cons. Laws, ch. 38], § 28).

The argument is made that the bank acted within its rights when it paid the check to Bushnell, because Bushnell was in truth the owner of the mortgaged land. The

record does not tell us whether his title was unincumbered, but ownership, though absolute, would not change the nature of his crime. The plaintiff did not loan her money to Bushnell, content to accept him as a borrower. He of all men was excluded. She loaned it upon the bond of Homer and Alice Remsen, with a mortgage as collateral. Undoubtedly, she believed, when she drew her check upon the bank, that Remsen was an owner of the property, and that the mortgage was a valid lien. This belief did not mean that some one else who had been expressly excluded as a borrower, had the right, because he was the owner, to step into the borrower's shoes. Remsen, if a real person, might have indorsed the draft without liability as a forger, however fraudulent the statement that he was the owner of the land (*Phelps* v. *McQuade, supra*). Bushnell, having asserted that the borrower was some one other than himself, was not at liberty to indorse, whether he was the owner of the land or not. No doubt there are border cases where the line is hard to draw between the impostor who appropriates what is intended for another, and the impostor who deceives by misrepresenting his responsibility or character. We have an illustration in *Hartford* v. *Greenwich Bank of City of N. Y.* (157 App. Div. 448; 215 N. Y. 726), a case which later opinions have said is not to be extended (*United Cigar Stores Co.* v. *American Raw Silk Co., Inc., supra; Nat. Surety Co.* v. *Nat. City Bank of Brooklyn,* 184 App. Div. 771). In the case at hand the line of division is reasonably clear. The plaintiff had no thought that she was accepting Bushnell's bond. The maker of the bond was to be the holder of the check.

The order of the Appellate Division should be reversed, and the judgment of the Trial Term affirmed, with costs in this court and in the Appellate Division.

McLAUGHLIN, J. (dissenting). For some time prior to the 20th of October, 1916, the plaintiff, at various

times, had invested different sums of money through her agent in Peekskill, one Bushnell, a lawyer. Shortly prior to the date named he asked her if she cared to loan $1,200 on a lot situate on Constant avenue in Peekskill. She told him if satisfied with the value of the lot she would make such loan. He showed her the lot, told her he had formerly owned it, but it was then owned by Homer E. Remsen. After looking it over she decided to make the loan, same to be secured by a bond and mortgage. At that time she did not know and had never heard, or had any knowledge of Remsen, except such as was given to her by Bushnell in connection with the transaction under consideration. She was a depositor in the defendant bank and then had something like $1,100 to her credit. She drew a draft for that amount on the bank, payable to her own order, took it to the office of her agent Bushnell, at his suggestion indorsed it payable to the order of Homer E. Remsen, and left it with Bushnell to be delivered to him. The balance of the $1,200 was made up as follows: She gave to Bushnell $50 in cash and also her promissory note for $50 payable to his order, which amount he was to advance and deliver with the draft for $1,100. He agreed to deliver the draft and the $100 in cash to Remsen, and in exchange for which Bushnell then gave her a bond purporting to be signed by Remsen, and exhibited to her a mortgage upon the lot which had previously been shown her, but which he retained for the purpose of having recorded. A fire insurance policy on the building upon the lot was also delivered to her at the same time, as was a certificate by Bushnell to the effect that Remsen had good title to the lot in question. Bushnell himself was the owner of the lot. Remsen did not exist and what purported to be his signatures to the bond and mortgage and insurance policy were, of course, fictitious. The draft was subsequently presented by Bushnell to the bank for payment. It then bore what purported to be the indorse-

ment of Remsen as well as the indorsement of Bushnell. Shortly after the payment of the draft Bushnell committed suicide and there was thereafter found among his papers the mortgage which purported to have been made by Remsen. These facts having come to the knowledge of the plaintiff, she demanded from the bank the amount paid on the draft, viz., $1,100. Defendant refused to make the payment and this action followed.

The trial court directed a verdict in favor of the plaintiff but on appeal to the Appellate Division the judgment was reversed and a new trial granted, two of the justices dissenting. Findings that plaintiff never intended Bushnell should collect the money on the draft, and that plaintiff intended Remsen and no one else should have the proceeds of it were reversed as were also what were termed conclusions of law: (a) That when the draft was presented for payment the bank should have determined the question of the genuineness of the signatures of the payees and indorsers; (b) that the plaintiff having intended that Remsen and no one else should have the proceeds, the fact there was no such person in the transaction did not authorize the bank to pay the money to Bushnell; and (c) that the bank did not use due and reasonable care and diligence in paying the draft to Bushnell, but was negligent in doing so.

With these findings reversed and a new trial ordered, I am unable to agree with the other members of the court that the judgment of the Appellate Division should be reversed and that of the Trial Term affirmed.

However, upon the merits I think the judgment of the Appellate Division was right and that the same should be affirmed. When plaintiff obtained from the bank the draft for $1,100, payable to her own order, took it to the office of her agent, and under his advice indorsed it " payable to Homer E. Remsen," and then gave it to such agent for delivery to him, she was estopped from thereafter asserting, as against the bank, that a good delivery

was not made. She was loaning her money, not to Remsen, but to the owner of the lot in question. She did not know Remsen; had never heard of him, except through Bushnell, and Bushnell's only description of him was that he was the owner of the lot upon which the mortgage had been given. Bushnell himself was the owner of the lot and, therefore, he having the draft, might indorse it under the name which he had assumed in the ownership of the lot. In doing so he did not commit a forgery.

*First National Bank of Fort Worth, Texas,* v. *American Exchange National Bank* (170 N. Y. 88) it seems to me is in point so far as the use of the name of Remsen is concerned. When the plaintiff indorsed the draft for $1,100 and made it payable to Remsen as the owner of the lot in question and delivered it to Bushnell as her agent, who delivered it to the owner of the lot, it hardly lies with her, as against the bank, to assert that there was not a proper delivery or proper indorsement.

Another case which I consider very much in point is *Hartford* v. *Greenwich Bank of City of N. Y.* (157 App. Div. 448; affd., on opinion of Scott, J., at the Appellate Division, 215 N. Y. 726). (See, also, *Holub-Dusha Co.* v. *Germania Bank of City of N. Y.,* 164 App. Div. 279.)

It is perfectly apparent that plaintiff intended to loan $1,200 to the owner of the lot which she had looked over and with the security of which she was perfectly satisfied. She did not know Remsen, made no inquiry as to his financial responsibility, and in fact, so far as appears, cared nothing about that. It was to acquire a lien upon the lot that the loan was made, not upon the financial strength of its owner. In indorsing the draft it was for the purpose of making it payable to the owner of the lot. When she gave it to Bushnell it was for the sole purpose of having him deliver it to the owner. Bushnell himself was the owner, even though he assumed to be acting under the name of Remsen. There cannot be, as it seems

[235 N. Y. 68] Dissenting opinion, per McLAUGHLIN, J. [Feb.,

to me, the slightest doubt but that she acquired a lien upon the lot, the strength of which was just as good as if Remsen had been the owner. Certainly Bushnell would be estopped from denying the existence of such lien. When the draft was presented by Bushnell for payment, what should the bank have done that it did not do? It, it is said, made an investigation for the purpose of ascertaining whether the signature of Remsen were genuine. But in making such investigation it would have ascertained that the name of Remsen meant nothing to the plaintiff; that she knew no such person and that such person did not exist; that she did not loan her money on the strength of the financial responsibility of such non-existent person; but, on the contrary, loaned it solely on the security given by the owner of the lot, which security she received. It would have ascertained that Bushnell was the owner of the lot; that he had given the mortgage and, therefore, she had received, so far as his title was concerned, all she had bargained for.

I cannot believe that a bank is held to such strict liability in paying a draft or check as that laid down in the prevailing opinion, or that the law is so unreasonable as to hold a bank liable upon the facts in this case.

I, therefore, dissent and vote to affirm the order of the Appellate Division.

HISCOCK, Ch. J., HOGAN, POUND and ANDREWS, JJ., concur with CARDOZO, J.; McLAUGHLIN, J., reads dissenting opinion in which CRANE, J., concurs.

Order reversed, etc.