Manufacturers and Traders Trust Company, Plaintiff, *v.* George J. Meyer Malt and Grain Corporation and Another, Defendants.

Supreme Court, Erie County, April 26, 1928.

**Insurance — liability insurance — defendant insurance company insured plaintiff bank against loss arising through payment of forged checks — deposit was made in bank to be withdrawn only on signatures of two men — checks were paid on genuine signature of one man who forged signature of other — said act constituted forgery within meaning of policy — insurance company is liable.**

A deposit was made in the plaintiff bank subject to withdrawal upon the joint signatures of two men. One of the men signed checks and forged the signature of the other, and those checks were paid by the plaintiff bank. The defendant insurance company issued a bond to protect the plaintiff bank against loss arising through the payment of forged or raised checks. The act of the individual in signing the name of the other man constituted forgery, within the meaning of the Penal Law, as well as under the common law, and was a forgery protected by the bond, and, therefore, the insurance company is liable under its policy.

The plaintiff bank cannot claim an estoppel against the person whose name was forged because that person was not in a position to discover the forgery nor charged with any duty to discover or disclose it, and for that reason the act or negligence of the person committing the forgery cannot be charged against the other person to protect the plaintiff bank which honored the false signature.

Motion by defendant United States Fidelity and Guaranty Company to dismiss the plaintiff's complaint.

*Locke, Babcock, Hollister & Brown,* for the plaintiff.

*Shire & Jellinek,* for the defendant Meyer Corporation.

*Love & Keating,* for the defendant United States Fidelity and Guaranty Company.

Hinkley, J.    The original complaint, at a time when the Meyer Corporation was the sole defendant, alleged the making and delivery of a promissory note by one Gilbert F. Forsyth to the defendant Meyer Corporation, its indorsement and delivery to the Forsyth Feed and Grain Company, and the latter's indorsement and delivery, before maturity, to the plaintiff.

The defendant Meyer Corporation made answer to the complaint. It alleged that the above-named Gilbert F. Forsyth was, prior to the giving of the note, indebted to the Meyer Corporation, and that the latter indorsed the note in question for the accommodation of the said Forsyth; that with knowledge of these facts the plaintiff bank, under an agreement with Forsyth and the defendant Meyer Corporation, discounted the note and placed the proceeds thereof to the credit of the Forsyth Feed and Grain Company, under which

name Forsyth was engaged in business; that it was further agreed that plaintiff bank would honor no checks upon the Forsyth account unless signed by both Forsyth and Eugene J. Meyer, who was treasurer of the defendant Meyer Corporation; and that any balance remaining in said account should be paid to the defendant Meyer Corporation upon its demand therefor; that Forsyth, without the knowledge or consent of Eugene J. Meyer, subscribed the latter's name to certain checks, which the plaintiff bank honored.

The plaintiff bank thereupon, by court order, was permitted to and did serve a supplemental complaint upon the defendant United States Fidelity and Guaranty Company. The supplemental complaint alleged that the defendant guaranty company had issued its bond to protect the plaintiff against loss " arising through the payment  *  *  *  of forged or raised checks or (genuine) checks bearing forged indorsements or the establishment of any credit to any customers on the faith of such checks; " the supplemental complaint alleged generally the facts set forth in the answer of the defendant Meyer Corporation as above indicated, and further alleged that Forsyth had, during the period of the bond, forged the name of Eugene J. Meyer to the checks, and asked judgment against the defendant guaranty company on its bond.

There is thus presented upon this motion to dismiss the supplemental complaint the question whether the above-quoted clause in the bond of the defendant guaranty company, issued to protect plaintiff against forgery, gives to the plaintiff protection under the circumstances of this case. The answer to that question turns upon whether Forsyth, within the meaning of that clause, forged the checks in question when he falsified the name of Eugene J. Meyer, without which name the plaintiff bank had agreed not to honor any checks drawn against the Forsyth account.

The Court of Appeals, in a recent case involving a similar clause in a bond, said: " We assume, though we do not now decide, that the word ' forged ' as used in the policy bears a meaning no broader than it does in the criminal law of the State." (*International Union Bank* v. *Nat. Surety Co.*, 245 N. Y. 368, 371.)

The same court has given to the word " burglary " in insurance policies a narrower meaning than that contained in the Penal Law. The court creates that limitation by its construction of an additional clause in the insurance policy requiring visible marks of force and violence upon the premises in making entry into or exit therefrom. Those of the court who dissented from the prevailing opinion realized that by a literal, strict interpretation of language the court did violence to the purpose and intent of the bond or policy,

which was to protect the insured against the very act which took place. Likewise, that the purpose and intent of the clause were ignored, for the requirement of visible evidence of force and violence was to establish the burglarious act, which was proven without dispute by living witnesses. (*Rosenthal* v. *American Bonding Co.*, 207 N. Y. 162.)

This trial court is, therefore, neither aided nor embarrassed by judicial precedent in defining the word " forged " in the bond in question. The court may narrow or it may enlarge the meaning under or over that contained in the Penal Law. Or the court, in the interests of clarity of precedent for future litigation, may very properly determine that the word " forged " is coextensive in meaning with the similar word as used in the Penal Law.

The dominant purpose of similar idemnity bonds is not to protect against loss but to protect against criminal loss. Naturally, we turn to the legislative interpretation of the criminal act in determining whether a loss occurred by reason of the commission of a crime or by some act not felonious.

The statutory definition of " forge " is to be found in section 880 of the Penal Law, as follows: " The expressions ' forge,' ' forged ' and ' forging,' as used in this article, include false making, counterfeiting and the alteration, erasure, or obliteration of a genuine instrument, in whole or in part, the false making or counterfeiting of the signature, of a party or witness,   *   *·  *."

Since the conception of that definition (Senate Committee Report, 1879, § 520) and its creation (§ 520, later § 880, Penal Law) no court has determined as yet how there can be a false making of a genuine instrument. In *Marden* v. *Dorthy* (160 N. Y. 39, 55) Judge O'Brien omits the word " genuine " and says: " The term ' forgery ' includes now, as it always did, the false making of a written instrument (Penal Code, § 520)."

Strictly construing the language of the statutory definition of " forgery," it might be contended that the checks were complete, genuine instruments without the signature of Meyer, and that at most a falsification of his signature was not an alteration, erasure or obliteration, but merely an addition. By a similar construction it might be contended that Meyer was not a party to the check, because not a maker, payee or indorser within the strict meaning of those words. (Bills and Notes, 8 C. J. 61.) Therefore, under such contentions it would follow that the falsification of the signature of Meyer was not a forgery within the Penal Law nor the terms of the bond of indemnity.

On the contrary, the checks were not complete without the counter signature of Meyer, and by contract with the plaintiff

bank and Forsyth, Meyer became a necessary party to every check. There is no statutory or other requirement as to the form of a check, and only such checks were genuine or complete as conformed strictly to the agreement of the parties interested. Even though Forsyth did not falsely make a genuine instrument, he made a false instrument, in whole or in part, and falsely made or counterfeited the signature of a party to the instrument.

Likewise, the act of Forsyth in falsifying the signature of Meyer comes within the definition of forgery, second degree, under section 887, subdivision 2, paragraph 5 of the Penal Law. " An instrument or writing, being or purporting to be the act of another, by which a pecuniary demand or obligation is or purports to be or to have been created, increased, discharged, or diminished, or in any manner affected, or by which any rights or property whatever are or purport to be or to have been created, transferred, conveyed, discharged, increased, or diminished, or in any manner affected, the punishment for forging, altering or counterfeiting which is not hereinbefore prescribed, by which false making, forging, altering, or counterfeiting, any person may be bound, affected or in any way injured in his person or property     *     *     *."

Tracing the word " forge " from its derivation through the common law and modern decisions, we find that it embraces the falsification by Forsyth of the counter-signature of Meyer.

It is said in 3 Coke's Institutes, 169: " To forge is metaphorically taken from the smith, who beateth upon his anvil, and forgeth what fashion or shape he will; the offence is called *crimen falsi*, and the offender *falsarius*; and the Latin word to forge is *falsare* or *fabricare*." (2 Russell Crimes [8th ed.], 1505, note.)

" Forgery at common law has been defined as ' the fraudulent making or alteration of a writing to the prejudice of another man's right ' (4 Bl. Com. 247); or, more recently, as ' a false making, a making *malo animo*, of any written instrument, for the purpose of fraud and deceit ' ; the word ' making ' in this last definition being considered as including every alteration of, or addition to, a true instrument. It has also been very clearly defined as the fraudulent making of an instrument which purports to be that which it is not." (2 Russell Crimes [8th ed.], 1505; Whart. Crim. Law [7th ed.], § 857, note.)

" Forgery is a species of common-law cheat, which early was separated from the rest under this distinctive name.     *     *     *     It is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." (1 Bishop Crim. Law [9th ed.], § 572.)

"Forgery is the fraudulent making or altering of any writing to the prejudice of another man's rights." (3 Words & Phrases, 2900.)

Forgery: "Falsely making or altering a writing, which is in such form as to be apparently of some legal efficacy, with intent to defraud." (McClain Crim. Law, § 744.)

"Forgery is the making of a false document, knowing it to be false, with the intention that it shall in any way be used or acted upon as genuine, to the prejudice of any one, whether within Canada or not, or that some person should be induced, by the belief that it is genuine, to do or refrain from doing anything, whether within Canada or not." (Canadian Crim. Law, § 466.)

An interesting history of forgery may be found in the opinion of Chief Judge Cullen in *People* v. *Rising* (207 N. Y. 195), and at page 198 he says: "Of the *Ward* case,* Mr. Chitty (3 Crim. L. p. 1022) says that it was there held that forgery at common law might be committed in respect to any writing whatever by which another might be defrauded."

"Experience has shown, however, that no generic definition of forgery can be comprehensive enough to include all the crimes that may be committed by the simple use of pen and ink. And that is why the Legislature has found it necessary to frame statutes so broad as to include in the category of forgeries many acts which are criminal in their tendency and effect but do not fall within the earlier definitions of that crime. One needs only to glance over the chapter on forgeries in the Penal Code to appreciate how manifold are the methods by which the crime of forgery may be committed." (*People* v. *Abeel*, 182 N. Y. 415, 421.)

"The term 'forgery' includes now, as it always did, the false making of a written instrument (Penal Code, § 520)." (*Marden* v. *Dorthy*, 160 N. Y. 39, 55.)

"One of the definitions of forgery approved in *People* v. *Filkin* (83 App. Div. 597; affd., on opinion below, 176 N. Y. 548), Mr. Justice Hiscock writing, was: 'The false making of an instrument which purports to be that which it is not.'" (*People* v. *Shanley*, 132 App. Div. 821, 830; *People* v. *Fitch*, 1 Wend. 198.)

Thus it will be seen that the false signing of the name of Eugene J. Meyer by Forsyth to the checks was a forgery within the common-law, statutory, judicial and text-book definitions. His act created an instrument which purported to be what it was not; it was committed with an intent to defraud (*People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 1, 14) and the signature was false. "Where an intent to defraud constitutes a part of a crime, it is

---

* *Rex* v. *Ward*, 2 Ld. Raym. 1461.—[Rep.

not necessary to aver or prove an intent to defraud any particular person." (Penal Law, § 3, subd. 5.) " Whenever, by any of the provisions of this chapter, an intent to defraud is required, in order to constitute an offense, it is sufficient if an intent appears to defraud any person, association or body politic or corporate, whatever." (Penal Law, § 921.)

There are no nice distinctions to be drawn here to determine whether the crime was forgery or something else. (*Strang* v. *Westchester County Nat. Bank*, 235 N. Y. 68, 71.) Forsyth did not deceive Meyer, whose name he signed, but the bank. It is immaterial whether he intended to defraud Meyer or the bank so long as he intended to defraud. Whatever his intentions as to the specific individual or corporation, he did defraud either Meyer or the bank, and the outcome of this action will determine which one, if either, was defrauded. " What he did was not the less a forgery because it has turned out in the end that the borrower was a myth." (*Strang* v. *Westchester County Nat. Bank*, 235 N. Y. 68, 71.) " Payments made upon forged indorsements are at the peril of the bank unless it can claim protection upon some principle of estoppel or by reason of some negligence chargeable to the depositor." (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318, 327.)

The bank cannot here claim an estoppel against Meyer, because he was not in a position to discover Forsyth's wrongful act, nor charged with any duty to discover or disclose it. For that reason, the act or negligence of Forsyth cannot be charged against Meyer to protect the bank which honored the false signature of Meyer made by Forsyth. " The indorsement of the names of the fictitious payees upon the checks, with intent to deceive and to put the checks in circulation, constituted the crime of forgery by means of which, and without any fault of the plaintiffs, payment was obtained thereon. The defendant does not occupy any different position with reference to the checks payable to fictitious payees than it does with reference to those payable to real parties whose indorsements were forged." (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318, 331; *People* v. *Browne*, 118 App. Div. 793, 799; *National Surety Co.* v. *National City Bank of Brooklyn*, 184 id. 771.)

The purpose and intent of the bond was to protect the bank against loss and not to release the indemnity company because the forgery was rare or novel. The bank contracted with Meyer that it would not honor any checks without his signature. It was bound to honor only such checks as bore the genuine signature of Meyer, and must determine that question at its peril. " It is the

general rule of law in this country, and such is the common law, that the drawee of a bill or check or persons purchasing it ' take the paper relying solely on the reputed responsibility of their transferers, and the other parties to it, and its apparent genuineness, and they, therefore, deal in it at their peril.' " (*Gallo* v. *Brooklyn Savings Bank,* 199 N. Y. 222, 226.)

The law renders liable the bank which fails to ascertain that the person to whom it makes payment is the genuine payee or is authorized by it to receive such payment. (*Graves* v. *American Exchange Bank,* 17 N. Y. 205.)

There is no reason in law why a bank should not by contract extend its obligation to discover a falsification and forgery which completed an otherwise incomplete instrument. The act of Forsyth in falsifying the name of Eugene J. Meyer is, therefore, a forgery, and the bank is entitled to indemnity under the bond given by the defendant guaranty company.

Motion to dismiss the supplemental complaint denied, with costs.