LILLIAN COHEN, Respondent, v. LINCOLN SAVINGS BANK OF BROOKLYN et al., Appellants.

Argued June 7, 1937; decided October 5, 1937.

*I. Maurice Wormser, Allan C. Rowe, Paul E. Mead* and *Bernard Fliashnick* for appellants. The indorsement by the impostor was not a forgery. He was the person to whom plaintiff intended her indorsed check to be delivered and was the person who was intended to receive the proceeds of the check. (*Strang* v. *Westchester County Nat. Bank,* 235 N. Y. 68; *Halsey* v. *Bank of New York & Trust Co.,* 270 N. Y. 134; *Phelps* v. *McQuade,* 220

N. Y. 232; *First Nat. Bank* v. *American Exchange Nat. Bank,* 49 App. Div. 349; 170 N. Y. 88; *Holub-Dusha Co.* v. *Germania Bank,* 164 App. Div. 279; *American Surety Co.* v. *Empire Trust Co.,* 237 App. Div. 522; *Sherman* v. *Corn Exchange Bank,* 91 App. Div. 84; *Seaboard Nat. Bank* v. *Bank of America,* 51 Misc. Rep. 103; 118 App. Div. 907; 193 N. Y. 26.)

*Leo Guzik* and *Ephraim S. London* for respondent. The check having been delivered to Abrams for delivery to the true owner of the award who did not indorse the check, the indorsement was a forgery as a matter of law. (*Oriental Bank* v. *Gallo,* 112 App. Div. 360; 188 N. Y. 610; *Gallo* v. *Brooklyn Sav. Bank,* 199 N. Y. 222; *Mercantile Bank* v. *Silverman,* 148 App. Div. 1; 210 N. Y. 567; *Palm* v. *Watt,* 7 Hun, 317; *American Surety Co.* v. *Empire Trust Co.,* 262 N. Y. 181; *Shipman* v. *Bank of State of New York,* 126 N. Y. 318; *National Metro Bank* v. *Realty App. & Title Co.,* 47 Fed. Rep. [2d] 982; *District Nat. Bank* v. *Washington Loan & Trust Co.,* 65 Fed. Rep. [2d] 831.)

LEHMAN, J. A check for $4,500, drawn upon Irving Trust Company by Lincoln Savings Bank to the order of the plaintiff, a depositor of the savings bank, was indorsed in blank by the plaintiff and handed by her to her husband, Samuel Goldberg, with authority to use the check in payment for the assignment to her of a half interest in an award of $10,000 made in proceedings for the condemnation of a parcel of real property. An attorney, William L. Abrams, had previously offered to sell the award to Goldberg at a discount. After some negotiations they agreed that the sale should be made at a discount of ten per cent. Goldberg at that time did not, so far as appears, know or care who was the owner of the award. What he wanted was, of course, a valid assignment by the owner of record of the award which Abrams had agreed to sell and he retained an

attorney, Feinstein, to search the title so that he might know who the owner of record was.

On the day set for the closing, Goldberg, accompanied by this attorney, went to Abrams' office. There he met Kurtz, another attorney, who claimed that he represented the owner of the award. A man who came into the office a little later was introduced by Kurtz as Harry Wolter, the owner. Goldberg told Abrams, that he was in a hurry and wished to leave. Abrams, Goldberg and Goldberg's lawyer, Feinstein, then went into another room. Goldberg had arranged that the plaintiff, his wife, should buy and pay for half the award and Samli Building Corporation, of which he was president, the other half. He had checks from both in his possession. He handed them indorsed in blank to Abrams and said to him: " Assign these checks to the proper owner and deliver to Mr. Feinstein the assignment of the papers to be recorded." He saw Abrams write over the blank indorsements the words " Pay to the order of Harry Wolter." Then Goldberg left the office.

The man introduced as Harry Wolter was in fact an impostor named Dennis. He executed and acknowledged an assignment of the award in the name of Harry Wolter. It was a forgery and resulted in no transfer of title to any award. Because Goldberg, Feinstein and Abrams believed that the stranger was Harry Wolter, the record owner of the award, and that his written assignment would pass good title to the award, the impostor received the checks which were payable only to the order of Harry Wolter. The impostor then indorsed the checks in the name of Harry Wolter and induced the defendant Jacoby to believe that he was in fact Harry Wolter, the payee named in the check obtained from the plaintiff, and to discount the check. Jacoby deposited the check in his own bank. Bearing Jacoby's indorsement as well as the indorsement of two banks, it was presented at the Irving Trust Company, upon which it was drawn, and there paid in due course. The fraud was revealed some

months thereafter. The plaintiff has received nothing for her check because no assignment by Dennis could transfer title to an award for property belonging to Harry Wolter as record owner. Her account in the savings bank has been charged with the amount of the check which was intended as payment for an assignment from *Harry Wolter* and which was payable only to the order of Harry Wolter, though Harry Wolter never indorsed or transferred the check. She has recovered judgment for the amount so charged against her, upon a finding that the signature of Harry Wolter, placed upon the check by an impostor, who has no right to that name, is a forgery just as the same signature placed by the same impostor upon the assignment is a forgery. Under the judgment the loss must ultimately fall upon the impleaded defendant Jacoby who paid value for it.

The Negotiable Instruments Law [Cons. Laws, ch. 38] provides (§ 42): " Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." In considering the effect of an indorsement made by one who falsely impersonates a payee named in a negotiable instrument, the courts have usually treated the statutory provision as a restatement of the common law and, at least, so far as concerns the problem as presented in this case, no distinction need be drawn.

We have said recently: " In determining whether there was a forgery the true test is whether or not the indorsement of the name of the payee was made by the person who was intended by the drawer to be the payee. If such person indorsed, there is no forgery." (*Halsey* v. *Bank of New York & Trust Co.*, 270 N. Y. 134, 138.) We apply that test here. It is indeed the test which is

almost universally applied in determining whether there has been a forgery. It is to be noted, however, that both at common law and under the statutory rule, a signature which is " forged or made without authority of the person whose signature it purports to be " may not be wholly " inoperative," but, on the contrary, may confer a right against a party to a negotiable instrument if " the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." A distinction between a case where there has been no forgery or want of authority and a case where a party against whom it is sought to enforce a right is " precluded from setting up the forgery or want of authority " seldom carries any practical consequences; and the courts may at times ignore distinctions in thought which carry no practical consequences. Thus sometimes a confusion seems to creep· unnoticed into many opinions which discuss the effect of a signature on a negotiable instrument made by a party who has been given possession of the instrument but is not named therein. The question of whether a challenged indorsement of the name of the payee has been made by the person who was intended by the drawer to be the payee then becomes obscured and confused with the question of whether a party against whom a right is asserted is " precluded " from setting up the forgery.

Where a person has been induced by fraud to draw a check to the order of an existing person, whose name and identity has been fraudulently assumed by another, and to deliver the check to the impostor, it has been held by most courts that an indorsement by the impostor is not a forgery and the bank upon which it is drawn may pay it upon such indorsement. " This result may be reached in several ways, none of which is without difficulty." (See McKeehan, The Negotiable Instruments Law, 41 American Law Register [N. S.], 499, 503, reprinted in Brannan's Negotiable Instruments Law [2d ed.], pp. 220, 247, 248.) In that article the

author says: " As a matter of fact, the courts base their decision on the first ground, namely, that the bank has merely carried out the drawer's intent. Here and there an expression may be singled out which seems to countenance one or more of the other views [negligence, estoppel, etc.], but a fair reading of the opinions shows that one idea dominates nearly all of them, namely, that the money has been paid to the person for whom it was really intended. The reasoning is briefly this: A man's name is the verbal designation by which he is known, but the man's visible presence affords a surer means of identification. C. was deceived as to the man he was dealing with, but he dealt with and intended to deal with the visible man who stood before him, identified by sight and hearing. Thinking that this man's name was B., he drew the check to B.'s order intending thereby to designate the person standing before him; so the bank has simply paid the money to the person for whom it was intended." (Cf. *Halsey* v. *Bank of New York & Trust Co., supra.*)

An academic legal problem may be greatly simplified by excluding, in its formulation, all facts which might introduce conflicting considerations to be weighed in the balance in reaching a sound conclusion. Legal problems, as presented in actual litigation, are seldom free from such complications. The rule that the payee of the check is the particular person who was intended by the drawer to be the payee can hardly be questioned. The name by which he is designated is merely the tag by which the intended person may be identified. A person, though bearing that name, if not the person intended, has no title to the check and cannot indorse or transfer title to it. (*Graves* v. *American Exchange Bank*, 17 N. Y. 205.) When an instrument is made " payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable," the instrument is payable to bearer. (Negotiable Instruments Law, § 28, subd. 3.) Even before the Negotiable Instruments

Law was adopted, a bill payable to a fictitious payee was payable to bearer without being indorsed by the maker or the person to whom it was delivered. (*Plets* v. *Johnson*, 3 Hill, 112; *Central Bank of Brooklyn* v. *Lang*, 1 Bosw. 202; *Irving Nat. Bank* v. *Alley*, 79 N. Y. 536.) When the instrument is payable to the order of a fictitious or non-existent person, and the person making it so payable has been induced to believe that he is describing an existing person as payee, no other person can acquire any right or title to the instrument. (*United Cigar Stores Co.* v. *American Raw Silk Co.*, 184 App. Div. 217; affd., 229 N. Y. 532; *Shipman* v. *Bank of State of New York*, 126 N. Y. 318.)

Every valid instrument which is not payable to bearer must be payable to a determinate payee and where it appears that the maker intended a particular person to be the payee, the payee so intended even though designated by a wrong name and even though he induced the maker to deal with him through fraudulent misrepresentation as to his responsibility, character or name, is the real payee and can by indorsement transfer title to the instrument. " Although one may be deceived as to the name of the man with whom he is dealing, if he dealt with and intended to deal with the visible person before him the check may properly be indorsed by the impostor." (*Halsey* v. *Bank of New York & Trust Co.*, *supra*, p. 139.)

Thus if we assume the premises of the problem as formulated by the author of the article, viz., that the maker of a check though " deceived as to the man he was dealing with " yet " intended to deal with the visible man who stood before him, identified by sight and hearing," and if " thinking that this man's name was B., he drew the check to B.'s order intending thereby to designate the person standing before him," then there can be little if any room for disagreement with the conclusion, generally accepted by courts and academic writers, that a drawee bank which pays the check upon the indorsement of the person intended to be the designated payee " has simply

paid the money to the person for whom it was intended."

In any examination of the cases which have considered the problems arising from false impersonation of a named payee, it quickly appears that the real difficulty has been in determining whether the intended payee was in truth the person bearing the name by which the payee was designated or was the visible person who had assumed that name in order to misrepresent his responsibility or character. Seldom, if ever, is possible argument excluded that the payee named and not the visible person, who by fraud obtains the instrument, was the payee actually intended, and " there are border cases where the line is hard to draw between the impostor who appropriates what is intended for another, and the impostor who deceives by misrepresenting his responsibility or character." (*Strang* v. *Westchester County Nat. Bank*, 235 N. Y. 68, 72.)

It has been said that " In these fraudulent impersonation cases, the maker or drawer of the instrument may be said to have a double intent. First, he intends to make the instrument payable to the person before him or to the person writing at the other end of the line, in case the negotiation is by correspondence. Second, he intends to make the instrument payable to the person whom he believes the stranger to be. The courts have almost unanimously held that the first is the controlling intent except where the named payee was already known to the maker or drawer, as in *Cundy* v. *Lindsay*, 3 A. C. 459, and *Rossi* v. *Nat. Bank*, 71 Mo. App. 150, *supra*, or was more particularly identified in some manner, *e. g.*, by some designation, description or title, as in the case of *Mercantile Nat. Bank* v. *Silverman*, 148 App. Div. 1; 132 N. Y. Supp. 1017, *supra*, in which cases the courts treat the second as the controlling intent." (Brannan on the Negotiable Instruments Law [5th ed.], pp. 310, 311.)

Perhaps, in truth, both intents are so inseparable that the choice of one intent rather than the other is purely arbitrary — an example of rationalization, perhaps uncon-

scious, to reach a desired result. (Cf. *Keel* v. *Wynne*, 210 N. C. 426, and note in 15 N. C. L. Review 186 [1937].) Nevertheless an examination of the cases in other jurisdictions can leave no doubt that, as Brannan points out, in most jurisdictions it has been held that " the first is the controlling intent " (*Montgomery Garage Co.* v. *Manufacturers Liability Ins. Co.*, 94 N. J. L. 152; see note in 22 A. L. R. p. 1228; *Land Title & Trust Co.* v. *Northwestern Nat. Bank*, 196 Penn. St. 230; see note in 50 L. R. A. p. 75; *Id.* v. *Id.*, 211 Penn. St. 211; see note in 52 A. L. R. p. 1329), though a minority sustain the view that the latter intent is controlling. (*Tolman* v. *American Nat. Bank*, 22 R. I. 462; *Keel* v. *Wynne*, *supra*.) We do not attempt in this opinion to analyze these cases in detail. In none are the facts exactly similar to those presented in the case under consideration. It is sufficient to point out that even in those cases which apply the so-called " majority rule " there was proof of an antecedent fraud by which a stranger induced a person to deal with him by masquerading as another and the negotiable instrument was made payable to the impostor as a result of the antecedent fraud and the negotiations induced thereby; and it appeared that the instrument was delivered to consummate the dealings with the stranger and with intent that it should be paid to him, though that intent may have been coupled with a second intent of the drawee " to make the instrument payable to the person whom he believes the stranger to be." It was the finding of this first intent which has dictated the conclusion in every case where a bank has been exonerated of fault in the payment of a negotiable instrument to a person not named in the instrument.

Thus it was said in *Montgomery Garage Co.* v. *Manufacturers Liability Ins. Co.* (94 N. J. L. 152): " We think that the rule is where, as here, the drawer of a check delivers it for a consideration which turns out to be fraudulent, to an impostor under the belief that he is the person whose name he has assumed and to whose order the check

is made payable, a *bona fide* holder for a valuable consideration paid to the impostor upon his endorsement of the payee's name, is entitled to recover from the drawer, *it appearing that the person to whom the check was delivered was the very person whom the drawer intended should endorse it and receive the money,* and that the drawer made no inquiry before issuing the check concerning the identity or credit of the named payee, who was unknown to the drawer." (Italics are ours.) The broader statement of the rule that the drawer of a check, draft or bill of exchange who delivers it to an impostor, supposing him to be the person whose name he has assumed, must bear the loss, is itself " limited by the hypothesis that the impostor is supposed to be the person named as payee." (Cf. *Land Title & Trust Co.* v. *Northwestern Nat. Bank, supra,* and note in 50 L. R. A. p. 75, and especially note on the second appeal in 52 A. L. R. p. 1329.) Indeed, the rule in such case that the drawer does *not* bear the loss in the absence of intent or some form of estoppel is so well established by precedent and statute that it seems hardly open to challenge.

In every case in this court where the loss has been imposed upon the drawer there has been proof of dealings between the drawer and another person who deceived the drawer as to his name and identity and there has been a finding that the drawer delivered the instrument to the impostor as the consummation of such dealings or negotiations and with intent that the instrument should be paid to the person with whom such dealings were previously had even though that person was designated by a name he did not bear. (Cf. especially *First Nat. Bank* v. *American Exchange Nat. Bank,* 170 N. Y. 88.) No person can become a " holder for value " of a negotiable instrument by transfer from a person not named therein and who has no title thereto or authority to transfer it. A person who pays value for an instrument takes the risk that the person named therein as payee is not the person designated and intended as payee, at least where

the party to the instrument against whom a right there-
under is asserted has not by act or default contributed to
the deception. He may protect himself against such
risk by requiring sufficient identification or guaranty by
others upon whom reliance can be placed. The drawer
of an instrument payable to a named payee is under
no duty to assure himself that the person to whom it
is delivered is the payee so named or is entitled to receive
it in his behalf. Though Goldberg erroneously believed
that the visible person was in fact Harry Wolter, the
person entitled to the check as consideration for the
promised assignment of the award, reasonable care did
not require that he determine it. He and Abrams were
justified in delivering to him the check made out to Harry
Wolter in reliance on the fact that the check could not be
transferred except by Harry Wolter, the named payee, or
paid except upon an order made by him. (*Mercantile
Nat. Bank* v. *Silverman*, 148 App. Div. 1; affd. on opinion
below, 210 N. Y. 567.) That may be true, indeed,
even where there is some doubt in the mind of the drawer
whether the person to whom the check is delivered may
not be masquerading as the named payee. (*Gallo* v.
*Brooklyn Sav. Bank*, 199 N. Y. 222.) Unless the evidence
in this case dictates the inference that Goldberg or
Abrams had the actual intent that the visible person,
though masquerading as Wolter, should receive payment
of the check, there can be no ground for reversing the
judgment.

We have pointed out at the beginning of the opinion
that the negotiations for the purchase of the award were
conducted by Goldberg entirely with Abrams. The
plaintiff and Goldberg, her representative, had no dealings
or communications of any kind with the impostor or
indeed with the owner of the property until the moment
that the impostor came into the room, and even thereafter,
so far as appears, their only dealing with him was, through
their agent, to hand him the check indorsed to the order of
Harry Wolter. The absence of all prior dealings differ-

entiates this case from every case which has been cited to sustain the contentions of the appellants. The premises fall upon which the conclusion in those cases rested that the drawer must bear the loss. Here there was no antecedent fraud by which the drawer was induced to enter into a transaction with the impostor. At the time when Goldberg left the office knowing that the checks were payable only to the order of Harry Wolter, the assignment had not been executed, delivered or examined. The impostor did not deceive " by misrepresenting his responsibility or character." He deceived by inducing Goldberg and Abrams to believe that he was Harry Wolter who, as they thought, was assigning an award which he owned, and thus he succeeded in appropriating what was intended for another. (*Strang* v. *Westchester County Nat. Bank, supra.*)

Physical presence is, as we have said, " often a surer means of identification " than a designated name (*Halsey* v. *Bank of New York & Trust Co., supra,* p. 139), but as we also pointed out in the same case, only where physical presence is combined with antecedent dealings and intention " to deal with the visible person." " The fact that the vendor deals with the person personally rather than by letter is immaterial, except in so far as it bears upon the question of intent." (*Phelps* v. *McQuade,* 220 N. Y. 232, 234.)

The appellants stress testimony of Goldberg that he intended that the checks should be delivered to Kurtz or his client. Of course Goldberg so intended. He accepted the introduction of the impostor as Harry Wolter, the true owner. He had no reason to suspect fraud. There was no reason to require further identification. He named as payee the person whom he intended, *i. e.,* Harry Wolter, the owner, from whom he expected to receive an assignment. He authorized delivery to the impostor because he believed that he was the person so intended. Under these circumstances it certainly cannot be said as matter of law that the payee intended was

the visible person with whom there had been no previous dealings and who could have no possible right to the check unless he was, as he claimed, Harry Wolter, the payee named therein. Any question of fact that may exist has been resolved in favor of the plaintiff. The only case in this State which in some aspects might seem to support the plaintiff's case is *Hartford* v. *Greenwich Bank* (157 App. Div. 448; affd., 215 N. Y. 726). After labored attempts to distinguish that case in *United Cigar Stores Co.* v. *American Raw Silk Co.* (*supra*), and to limit it in *Strang* v. *Westchester County Nat. Bank* (*supra*), this court definitely overruled the case in *Ulmann Co.* v. *Central Union Trust Co.* (257 N. Y. 563), and thus definitely established the rule that only a payee named in the instrument or identified by previous dealings and intended to be described by that name can transfer title to the instrument.

It has been said that " both commercial practice and legal theory tend more and more to disregard everything except that which actually appears on the instrument." (McKeehan, The Negotiable Instruments Law, 41 American Law Register [N. S.], p. 449.) Only in that way can merchants rely upon the rule that a negotiable instrument in the hands of an innocent purchaser will be paid according to its tenor and intent and will not be paid otherwise. The judgment in favor of the plaintiff enforces rights in accordance with the written instrument and in accordance with commercial practice and especially the practice upon the closing of title, and it accords with the decisions of this and other States.

The judgment should be affirmed, with costs.

HUBBS, J. (dissenting). The city of New York made an award in a condemnation proceeding to Harry Wolter. William L. Abrams, an attorney who also apparently dealt in condemnation awards, met Samuel Goldberg, the plaintiff's husband, and offered to sell him a condemnation award at a discount. Later Goldberg and

Abrams agreed upon the price to be paid for the award and Goldberg referred Abrams to his attorney, Irving Feinstein, who would search the record title, attend to the legal details and fix a date for closing.

The plaintiff gave her husband, Goldberg, full authority as her agent to handle the matter. Goldberg, who had known Abrams for some time, relied upon him for the regularity of the transaction and relied upon his own attorney, Feinstein, in the matter of the title. Feinstein and Goldberg met Abrams at his office to close the transaction. Attorney Albert Kurtz, who was supposed to represent the owner of the award, was also present, and was dealt with as the attorney for an impostor called Harry Wolter, who appeared at the office and was introduced as Harry Wolter. Goldberg testified that he believed him to be the person from whom he purchased the award. Goldberg had in his possession a check issued by the defendant Lincoln Savings Bank for $4,500, and drawn on Irving Trust Company, payable to the order of plaintiff, a depositor, who had indorsed it in blank and delivered it to her husband, Goldberg. He handed the check to Abrams with instructions to deliver it to Attorney Kurtz or his client.

Goldberg saw Abrams write over the blank indorsement of plaintiff, " pay to the order of Harry Wolter." At the same time he delivered to Abrams another check for an assignment of an interest in the award to a third party. That check is not involved in this action.

Goldberg testified that he gave the two checks to Abrams to deliver to Attorney Kurtz or his client. The man who represented himself as Harry Wolter was an impostor. His true name was Dennis. He executed and acknowledged an assignment of the award in the name of Harry Wolter and it was delivered to plaintiff's attorney. He indorsed the check in the name of Harry Wolter and transferred it to the defendant Jacoby who became an innocent holder for value. The check was presented in due course to the Irving Trust Company,

the drawee, and paid. The defendant Lincoln Savings Bank, the drawer, charged the amount against the account of the plaintiff, the payee.

This action is to recover from the Lincoln Savings Bank the amount of the check upon the ground that the indorsement was a forgery and, therefore, that the charge of the amount against the plaintiff's account should be canceled. The other parties were interpleaded and judgment over sought against them.

The assignment of the award was stricken from the records as it was a forgery. If this judgment is affirmed, the loss will fall upon the appellant Jacoby, an innocent holder for value, as judgment over has been recovered by each of the other defendants. If the indorsement of the name Harry Wolter on the check made by the impostor Dennis was a forgery, the loss must be borne by the appellant Jacoby as he was the person who accepted the check from Dennis, the impostor, and thereafter transferred it.

" One who obtains possession of a bill or note by means of a forged indorsement acquires no interest in the instrument, although he is ignorant of the forgery, and has no right to enforce its payment against any party to it unless such party is estopped or precluded from setting up the defense of forgery." (8 Am. Jur., Bills and Notes, § 605; Negotiable Instruments Law [Cons. Laws, ch. 38], § 42; *Shipman* v. *Bank of State of New York*, 126 N. Y. 318; *Seaboard Nat. Bank* v. *Bank of America*, 193 N. Y. 26.)

On the other hand, if Goldberg, acting as plaintiff's agent, intended to deliver the check to Dennis, believing him to be Harry Wolter, the owner of the award, then the indorsement of the name " Harry Wolter " on the check was not a forgery, although made by an impostor for the purpose of accomplishing a fraud. (*First Nat. Bank* v. *American Exchange Nat. Bank*, 170 N. Y. 88; *Halsey* v. *Bank of New York & Trust Co.*, 270 N. Y. 134; *Montgomery Garage Co.* v. *Manufacturers' Liability Ins. Co.*

94 N. J. L. 152; *s. c.*, 22 A. L. R. p. .1224, and note in which many cases from various jurisdictions are collated; 7 Am. Jur., Banks, § 599.)

A contrary view is held by the courts of Rhode Island and a few other States. (*Tolman* v. *American Nat. Bank*, 22 R. I. 462.)

The rule prevailing in those States is not the law of this jurisdiction. Thus, the question for determination on the undisputed evidence is whether the indorsement of the check by Dennis, the impostor, in the name of Harry Wolter, constituted a forgery.

Under the Negotiable Instruments Law the fact that the check was procured from Goldberg by fraud does not constitute a defense as against Jacoby, an innocent purchaser for value, or justify a recovery against the appellant bank which issued the check and charged the amount against the plaintiff's account.

If an impostor deceives a drawer of a negotiable instrument as to identity by posing as another, and the instrument is delivered to and indorsed by him in the name of the person whom he fraudulently represents himself to be, his indorsement is not a forgery and a subsequent innocent holder for value may enforce it against the maker. The same principle applies under the facts in this case. (*Montgomery Garage Co.* v. *Manufacturers' Liability Ins. Co., supra*, and note in 22 A. L. R. p. 1224; *First Nat. Bank* v. *American Exchange Nat. Bank, supra; Halsey* v. *Bank of New York & Trust Co., supra*.)

The underlying basic principles which have induced a great majority of courts to adopt that rule are the business necessity of keeping commercial paper negotiable; the fact that the maker delivers the instrument to the person intended, although deceived as to the actual identity of that person (*Land Title & Trust Co.* v. *Northwestern Nat. Bank*, 196 Penn. St. 230; see note in 50 L. R. A. p. 75; *s. c.*, 211 Penn. St. 211; *Robertson* v. *Coleman*, 141 Mass. 231; *Strang* v. *Westchester County Nat. Bank*, 235

N. Y. 68; *First Nat. Bank* v. *American Exchange Nat. Bank, supra; Halsey* v. *Bank of New York & Trust Co., supra*); the fact that a maker has the opportunity of ascertaining the true identity of a person to whom the instrument is delivered while a purchaser for value of the instrument may know the signature of the drawer and rely upon it but cannot in the ordinary course of business know to whom the maker intended to deliver the instrument; and finally that where one of two innocent persons must suffer a loss, that loss should fall upon the one who was at fault in the first instance and made the loss possible. (*United States* v. *National Exchange Bank*, 45 Fed. Rep. 163; *Central Nat. Bank* v. *National Met. Bank*, 31 App. Cas. [D. C.] 391; *Montgomery Garage Co.* v. *Manufacturers' L. I. Co., supra; McHenry* v. *Old Citizens Nat. Bank.* 85 Ohio St. 203.)

It is often difficult to determine whether an impostor has appropriated an instrument intended for someone else or by fraud has induced the delivery of the instrument to himself. If the impostor has appropriated that which was intended for another and indorsed it in the name of the other, his indorsement constitutes a forgery and the maker is not liable.

In many cases there exists two intents on the part of the drawer. He may intend by issuing the instrument to pay a debt to his creditor or to pay the vendor of property which he intends to purchase and at the same time he may intend to deliver the instrument to an impostor who is present and fraudulently represents himself to be the creditor or vendor with whom the maker supposes he is dealing. In such cases, ordinarily the actual presence of the impostor and the delivery of the instrument to him constitutes the controlling intent. An indorsement by the impostor does not constitute a forgery and the loss must fall upon the one who in the first instance had it within his power, before placing in circulation a negotiable instrument, to ascertain the actual fact. (*Robertson* v. *Coleman, supra.*)

The question here presented is not the delivery of a check to a fictitious payee, in which case a different rule may be applicable. (7 Am. Jur., Banks, § 601.) Neither is it a case where a check is delivered to an agent to be delivered by him to his principal, in which case an indorsement by an impostor constitutes a forgery. (7 Am. Jur., Banks, § 600.)

Only one inference can be drawn from the undisputed facts here involved. No one present knew the true Harry Wolter. Dennis, the imposter, was introduced as Harry Wolter and Goldberg testified that he believed him to be the owner of the award and that he was present with his attorney, Kurtz, to close the transfer of the award. He also testified as follows: " Q. Did you give the two checks to Abrams to deliver to Kurtz or his client? A. Yes."

The only client Kurtz had, so far as Goldberg knew, was the impostor introduced as Harry Wolter. Goldberg's instructions, according to his testimony, were to deliver the check to Kurtz or his client. His client, according to the testimony, was the imposter. True it is that at one time in his testimony, Goldberg stated that he instructed Abrams to " assign the checks to the proper owner," but he also testified that he believed the impostor to be the person from whom he purchased the award, and, therefore, the owner. It is perfectly clear that Goldberg believed the impostor to be the true Harry Wolter, the owner of the award, and that he intended the check to be delivered to him upon his executing and delivering an assignment of the award. The impostor, at the same time, executed and delivered an assignment of the award in the name of Harry Wolter and it was accepted by the attorney for the plaintiff and the check was delivered as Goldberg instructed and intended it should be. Goldberg determined for himself the identity of the person to whom he instructed the check to be delivered and plaintiff is bound by his act. In those circumstances, the indorsement of the check by the impostor was not a forgery and there can be no recovery

in this action. This is not a case where a purchaser has negotiated with the owner for the purchase of property and by fraud was induced to deliver a check to an impostor representing himself to be the owner. Here the purchaser did not know the true Harry Wolter, the owner, and had never communicated with him. The only person known as Harry Wolter was the impostor to whom Goldberg gave instructions that the check should be delivered.

While it is unfortunate that the plaintiff must suffer the loss caused by the fraud, it would be equally unfortunate if the innocent purchaser for value of the check should be required to bear the loss when he was entirely free from fault.

The judgment should be reversed, with costs and the complaint dismissed.

LOUGHRAN, FINCH and RIPPEY, JJ., concur with LEHMAN, J.; HUBBS, J., dissents in opinion in which CRANE, Ch. J., concurs; O'BRIEN, J., taking no part.

Judgment affirmed.