UNITED STATES of America, Appellee,

v.

FIRST NATIONAL CITY BANK OF NEW YORK, Appellant.

No. 390, Docket 29429.

United States Court of Appeals
Second Circuit.

Argued March 18, 1965.

Decided Nov. 24, 1965.

Moore, Circuit Judge, dissented.

Arthur M. Handler, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, on the brief) (Stephen Charnas, Asst. U. S. Atty., of counsel), for appellee.

Charles A. Crocco, Jr., New York City (Shearman & Sterling, New York City, on the brief) (Herman E. Compter, New York City, of counsel), for appellant.

Before MOORE, FRIENDLY * and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

The question we are called upon to decide is whether First National City Bank ("Bank") breached express warranties in connection with Federal Housing Authority ("FHA") insurance issued pursuant to Title I of the National Housing Act, 12 U.S.C. § 1702 et seq., and the regulations promulgated thereunder, 24 C.F.R. § 200.1, et seq. The Bank appeals from Judge Bonsal's award of summary judgment in favor of the government. We affirm.

The facts, which are not in dispute, disclose that on December 2, 1953, Eliza Findley applied to the Bank for a property improvement loan in the amount of $2,000. At the Bank's request, the appropriate papers were submitted, including an FHA Title I Credit Application, bearing the signatures of the borrower and co-maker of the note—one "Victoria North"— and a "Credit Statement of Co-maker." In addition, a certified copy of the deed to the property to be improved, listing Eliza Findley and Victoria North as grantees, was exhibited to an employee of the Bank.

As part of its routine credit investigation, a Bank investigator telephoned "McGuire Realty," the firm listed on the "Credit Statement of Co-maker" as Victoria North's employer, and was advised that she had been employed for two years and that there were no existing attachments upon her salary.[1] Relying upon this investigation, as well as the papers submitted, the Bank decided to make the loan, and on December 4, 1953, a note was signed by Eliza Findley as borrower and Victoria North as co-maker.

After making one payment of $62.08, the borrower defaulted. On December 16, 1954, the loan matured and shortly thereafter, the Bank obtained judgments against both borrower and co-maker. Two years later, the Bank learned and advised the FHA that "Victoria North" had used the names "Gwen Morgan" and "Mary Elizabeth Morgan" in connection with two other FHA insured loans.

On December 26, 1958, the Bank submitted a Title I Claim for Loss to the FHA pursuant to its Contract of Insurance on the defaulted promissory note. The Bank warranted in this Claim for Loss that it had complied with the terms of the insurance contract and the Regulations promulgated under the National Housing Act. In assigning the defaulted promissory note to the government, the Bank endorsed on it "All right, title and interest of the undersigned is hereby assigned without warranty (except that the note qualifies for insurance), to the United States." On March 16, 1959, the FHA paid the Bank's claim in the amount of $1,028.56 (the balance of the loan remaining after certain postmaturity pay-

---

* Judge Marshall, who heard the argument on this appeal, resigned before this decision was rendered. The Chief Judge designated Judge Friendly to replace Judge Marshall on this appeal.

1. In its brief on appeal, the appellee pointed out that the telephone number given for Eliza Findley on her "Request for Application" was the same as that given for Victoria North's alleged employer (McGuire Realty) on the "Credit Statement of the Co-maker."

ments). Then, in December 1959, the FHA demanded reimbursement from the Bank, claiming that the loan was not eligible for insurance because of non-compliance with the Regulations since the signatures of "all parties to the note" were not "genuine." When the Bank refused reimbursement, the Government brought this action.

Both parties moved for summary judgment. Judge Bonsal, in granting the government's cross-motion for summary judgment, held that the Bank had breached its warranty to the FHA because the signature "Victoria North" on the promissory note was not "genuine" within the meaning of 24 C.F.R. § 201.2(a).[2]

■ This piquant case is not without its puzzling aspects. The meaning of the second sentence of 24 C.F.R. 201.2(a), "The signatures of all parties to the note must be genuine," must be determined in the light of its context and purpose. The previous sentence requires that "The note shall bear the genuine signature of the borrower as maker, shall be valid and enforceable against the borrower or borrowers as defined in § 201.1(i), and shall be complete and regular on its face." The tests of the second and third clauses would seem to have been met, for "Virginia North" could not have defended on the ground that her real name was Mary Gwendolyn Rosita Morgan. But, the Regulations are not satisfied for insurance purposes merely because the note was "enforceable." They make clear, as we have indicated, that the signature of all parties must be *genuine*. § 201.5(b) casts light on the purpose for such a *sine qua non*. That regulation requires that the credit information relied upon by the insured must, in its judgment, clearly show the borrower to be solvent, "with reasonable ability to pay the obligation and in other respects a reasonable credit risk." See also § 200.167. And, § 201.5 (a) commands that "Prior to making a loan the insured shall obtain a dated cred-

it application executed by the borrower on a form approved by the Commissioner * * * In addition, the loan file shall contain either a commercial credit report on the borrower or evidence of the lender's investigation of the borrower's credit." This requirement, read with the proscription of § 201.5(c) that no disbursement shall be made if the insured has knowledge that the borrower is more than 15 days overdue on any obligation owing to or insured by the Federal Government, manifests that the use of a false name would impair if not preclude adequate checking of the answers to the questions in the Credit Application and make it difficult if not impossible for the insured effectively to carry out its disbursement duties under § 201.5(c).

■ The Bank's contention that the co-maker's signature was "genuine" because it was made by a person not fictitious, whom the Bank considered the co-maker and the co-owner of the property, is not persuasive for it misses the point on this appeal. We are not called upon to decide whether the Bank could enforce its claim against the borrower or co-maker; nor is this a situation where the Bank would not be liable for cashing a check drawn to the order of an impostor. Cf. International Union Bank v. National Surety Company, 245 N.Y. 368, 157 N.E. 269, 52 A.L.R. 1375 (1927); Cohen v. Lincoln Savings Bank, 275 N.Y. 399, 10 N.E.2d 457 (1937). The question we must decide is whether the note was uninsurable and the contractual warranties were breached because the co-maker's signature was not "genuine" within the meaning and context of the Regulations. This we have answered in the affirmative.

Affirmed.

MOORE, Circuit Judge (dissenting):

The majority concede that the note signed by Victoria North as co-maker was "enforceable" and "complete and reg-

---

**2.** In May 1958, the co-maker (Mary Gwendolyn Rosita Morgan) pleaded guilty to a Criminal Information filed in the Eastern District of New York, charging her with a conspiracy to defraud the United States in this loan transaction in signing the Credit Application and the Credit Statement of Co-maker as "Victoria North."

ular on its face." Reliance for the result reached is placed upon the requirement that "The signatures of all parties to the note must be genuine," 24 C.F.R. 201.2(a). The opinion merely concludes by its own fiat and without reference to other controlling sections of the applicable statutes or to New York decisions that the co-maker's signature was not "genuine."

There can be no factual dispute that the co-owner (with Eliza Findley) of the property to be improved was "Victoria North." She was an actual person and for purposes of owning the property was Victoria North, one of the record title owners. Nor can there be any question that the signature on the note was the actual or "genuine" signature of the Victoria North to whom the Citibank intended to make the improvement loan. Query, whether the use by Victoria North of other or different names in other transactions with other persons makes her signature in a transaction wherein she was using the name Victoria North any less genuine?

"Even though the name which was signed might originally have been assumed with other fraudulent purpose, the instrument would still not be false or forged if, in fact, it was made by the person who purported and was understood to be the maker." International Union Bank v. National Surety Company, 245 N.Y. 368, 374, 157 N.E. 269, 271. "The name by which [the payee, here Victoria North] is designated is merely the tag by which the intended person may be identified." Cohen v. Lincoln Savings Bank, 275 N.Y. 399, 405, 10 N.E. 2d 457, 460. Thus, "even though [the payee] induced the maker to deal with him through fraudulent misrepresentation as to his responsibility, character or name, [he] is the real payee and can by indorsement transfer title to the instrument." Id. p. 406, 10 N.E.2d p. 460.

This case, however, should not be decided upon abstract theories of the meaning of the word "genuine." Other FHA regulations create, control and limit the lender's [insured's] liability. Regulation 201.5(b) provides: "If after the loan is made, an insured who acted in good faith discovers any material misstatements * * * the eligibility of the note for insurance will not be affected." When discovery was made by Citibank that another name, Mary Gwendolyn Rosita Morgan * had also been used by Victoria North, Citibank immediately complied with the requirement that "the insured shall promptly report such discovery to the Commissioner." § 201.5(b). Also applicable is 24 C.F.R. 201.6(f) which provides:

"(f) *Reliance on Credit Application.* An insured acting in good faith may in the absence of information to the contrary, rely upon all statements of fact made by the borrower, which are called for by the borrower's credit application, in determining the eligibility of the loan."

The trial court based its decision almost exclusively on a plea of guilty entered by Mary Gwendolyn Rosita Morgan (Victoria North) in 1958, five years after the original note was executed and two years after Citibank notified FHA of the dual name situation saying "her plea of guilty in the Eastern District establishes conclusively that her intent was to defraud the United States by concealing the existence of a fixed obligation," and although conceding that "her plea was with respect to the Credit Application and Credit Statement, the same intent must be assumed in the use of the name in signing as co-maker the note which followed the Credit Application and Credit Statement." I can find no logical or factual basis for this assumption. Nor is there any legal ground for the conclusion that "since the signature of Victoria North was made with intent to defraud, it is not 'genuine' under Regulation 201.2 * * *." Regulation 201.5(b) must have been intended to cover just such a situation as is here presented, namely, an insured "who acted in good

* The names "Gwen Morgan" and "Mary Elizabeth Morgan" also were used.

faith" (and there is no proof to the contrary) and who "after the loan is made" discovered "material misstatements." But the use of the second name (Victoria North) since it was descriptive of the co-owner of the property might well not have been a misstatement at all. However, even were there fraudulent misrepresentation, Citibank was entitled to the umbrella of protection raised over it by Cohen v. Lincoln Savings Bank, supra, and International Union Bank v. National Surety Company, supra, in which fraudulent purpose was assumed.

For these reasons, I would reverse the order granting summary judgment in favor of plaintiff and grant summary judgment for the defendant, dismissing the complaint.