**GUARDIAN FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**Patricia R. HARRIS, Secretary of Housing and Urban Development, Defendant.**

Civ. A. No. 77–1414.

United States District Court,
District of Columbia,
Civil Division.

Dec. 5, 1977.

David R. Kuney, Washington, D.C., for plaintiff.

A. Patricia Frohman, Asst. U. S. Atty., Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN H. PRATT, District Judge.

This matter is before the Court on cross-motions for summary judgment on the question whether the Government's refusal to honor a claim by the Guardian Federal bank on a federally-insured housing loan is justified in light of the applicable statutes and regulations. For the reasons given herein, the plaintiff's motion for summary judgment is granted.

The Guardian Federal Savings and Loan Association is a Maryland bank that since 1963 has held a contract with the Federal Housing Administration entitling the bank to make federally-insured home loans under the National Housing Act, 12 U.S.C. §§ 1701 et seq. On June 15, 1971, the bank advanced funds to Mr. and Mrs. John R. Maben for the purpose of enabling the Mabens to make home improvements, and received two promissory notes for $5,293.33 and $3,205.13, under the loan provisions of the National Housing Act. About a year later, according to the complaint, the Mabens defaulted on both notes. In June 1974 Guardian Federal filed separate actions on each note in the Superior Court of the District of Columbia, Civ. Nos. 5432–74, 5433–74. On July 29, 1974, judgment by default was entered for Guardian Federal in each action. In August 1974 Guardian Federal applied for reimbursement for its loss on each note pursuant to the regulations governing claims for reimbursement on federally-insured loans. 24 C.F.R.

§ 201.11. In February 1975, the Department of Housing and Urban Development honored the claim to the extent of $5,879.00. Because this action is to recover precisely that sum, plaintiff apparently does not dispute the amount of the February disbursement. On March 19, 1975, both default judgments in favor of Guardian Federal were set aside on grounds of improper service, and the two actions underlying the judgments apparently are still pending in Superior Court. In July 1975, the Department demanded, and received, the sum of $5,879 from Guardian Federal on the ground that the judgments assigned to the Department were set aside. In June 1977, Guardian Federal filed this action in the Superior Court of the District of Columbia to recover $5,879.00. The action was removed to this Court in August pursuant to 28 U.S.C. § 1442(a)(3). Our jurisdiction rests on the portion of the Tucker Act providing for concurrent jurisdiction in the District Courts and the Court of Claims over actions against the United States for money damages not exceeding $10,000.00.

The issue is whether Guardian Federal's claim for reimbursement complies with the regulations governing such claims. These require that the claimant not only file appropriate forms and proofs of loss, as Guardian Federal apparently has done, but also assign to the United States "[t]he note and any security held or judgment taken." 24 C.F.R. § 201.11(f). The form of assignment is to read as follows: "All right, title, and interest of the undersigned is hereby assigned (without warranty except that the note qualifies for insurance) to the United States of America." *Id.* § 201.11(g). Notwithstanding Guardian Federal's willingness to execute the requisite assignments, the Government argues that it need accept neither the default judgments, because each has been set aside, nor the notes themselves, because the face of each bears the legend, "Cancelled and merged in Judgment in Superior Court of the District of Columbia." According to the Government, the cancellation of the notes renders them unacceptable under the regulation relating

to "eligible notes": "The note . . . shall be valid and enforceable against the borrower or borrowers . . . and shall be complete and regular on its face." 24 C.F.R. § 201.2.

■ The initial determination to be made is whether Guardian Federal is obliged to reduce the indebtedness evidenced by the notes to a valid judgment before submitting its claim. If so, its claim clearly is not in compliance. The statute and regulations, however, establish no such obligation. The regulations' reference to the mandatory assignment of "any security held or judgment taken" suggests that a claimant may proceed to judgment but need not do so. Moreover, in a case decided under a similar version of the regulations, the court noted in passing that the bank had assigned the note itself, not a judgment, to the United States. *Citizens National Trust and Savings Bank v. United States*, 270 F.2d 128, 129–30 (9th Cir. 1959). The implication is that, at least at one point, the United States accepted assignments of notes only. Nothing indicates the practice now is otherwise. Similarly, the fact that the bank has instituted proceedings against the Mabens should not, of itself, bar the bank's claim, though the Government might not be required to accept assignment of the judgments once they had been set aside.

■ The remaining question is whether the Government is required to accept assignment of the notes and reimburse the bank. The Government's argument that it need not do so is premised wholly on the regulation defining "eligible notes" and providing that a note must be "valid and enforceable . . . and . . . complete and regular on its face." 24 C.F.R. § 201.2(a). Moreover, the only respect in which the two notes in question are alleged not to comply with this regulation stems from the cancellation stamp across the face of each. Even if the cancellation mark were an irregularity within the meaning of the regulation, we conclude that it does not render the note ineligible under the regulation because we construe the regulation to apply, not at the point at which a bank submits its claim, but at the point at which the loan itself is being arranged. The determination of eligibility patently must be made before the loan funds change hands. Other regulations provide that "[i]f, after the loan is made, an insured [bank] who acted in good faith discovers any material misstatements or misuse of the proceeds of the loan by the borrower, dealer or others, the eligibility of the note for insurance will not be affected." 24 C.F.R. § 201.5(b). An initial determination of a note's eligibility is made when it is executed; the two notes here apparently were complete and regular when executed. While certain subsequent events or subsequently discovered facts will affect a note's eligibility, *e. g., United States v. First National City Bank of New York*, 353 F.2d 308, 310 (2d Cir. 1965); *Citizens National Trust & Savings Bank, supra* at 133, the cancellation stamp on the notes, standing alone, does not render them unqualified for insurance absent a determination that the notes are not valid and enforceable against their makers. The federal law merchant rule appears to be that unintentional, fraudulently induced, or mistaken cancellation of a note is inoperative. *State Street Trust Co. v. Muskogee Electric Traction Co.*, 204 F.2d 920, 922–23 (10th Cir. 1953); *Miller v. Usry*, 160 F.Supp. 368, 370 (W.D.La.1955); *see* Uniform Negotiable Instruments Law § 123.

■ The record here indicates that the default judgments taken, and the concomitant cancellations, were premised on the mistaken assumption that the judgments were valid. It is our view that the cancellations became inoperative and of no force and effect the moment the judgments into which they were "merged" were set aside. The notes are still "eligible notes" as that term is defined in the regulations. 24 C.F.R. § 201.2(a).[1] After claim for reim-

1.  § 201.2 Eligible notes.
   (a) *Validity.* The note shall bear the genuine signature of the borrower as maker, shall be valid and enforceable against the borrower or borrowers as defined in § 201.1(i), and shall be complete and regular on its face.

bursement for loss is made, "*the note* or any security held or judgment taken must be assigned in its entirety . . . ." 24 C.F.R. § 201.11(b) (Emphasis supplied) Plaintiff has attempted to make such assignment. We further hold that defendant must accept the assignment of the notes and reimburse plaintiff for the loss it has unquestionably suffered.

A decision in favor of the Government in this case might not only contravene the regulations, but also not advance this litigation in the least. Guardian Federal presumably would resume its efforts to obtain valid service on the Mabens. If it failed to obtain service, which appears not unlikely in view of the passage of 2½ years, or even if matters proceeded to a valid judgment and the bank found itself unable to collect, the bank could again claim reimbursement for the loss. In view of the purposes of the National Housing Act, which are to promote construction and improvement of private housing, in part by protecting banks against losses attributable to absconding or impecunious borrowers, the bank's failure to obtain valid service or to collect on a valid judgment would entitle it to reimbursement. *Citizens National Trust & Savings Bank, supra* at 133. Our determination that the Government must now assume the risks of failure of service or collection does no more than impose upon it the proper duties of an insurer and is fully consistent with the public policy underlying the passage of the legislation. Though the Government must reimburse Guardian Federal on the notes, it need not absorb any fees incurred by Guardian Federal in the course of its abortive actions on the notes. Plaintiff's submissions attribute $100 of the $5,879 claim to "uncollected court costs." Accordingly, plaintiff's motion for summary judgment for $5,779 is granted, and defendant's motion on that issue is denied.

The signatures of all parties to the note must be genuine. If the note is executed for and on behalf of a corporation or in a representative capacity, the note must create a binding obligation of the principal.